**In the Interest of D.S., Jr., a Child.**

No. 2–04–372–CV.

Court of Appeals of Texas,
Fort Worth.

Oct. 6, 2005.

Wes Dauphinot, Arlington, for appellant.

Tim Curry, Criminal Dist. Atty., Charles M. Mallin, Anne Swenson, David M. Curl, Cindy Williams, Asst. Criminal Dist. Attys, Fort Worth, for state.

Panel A: LIVINGSTON, HOLMAN, and GARDNER, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

### Introduction

Appellant Amanda W. appeals the trial court's order terminating her parental rights to her child, D.S., Jr. In one point she argues that there is factually insufficient evidence to support the trial court's

finding that termination was in D.S.'s best interest. We affirm.

## Background Facts

Appellant is D.S.'s mother. D.S. was two years old at the time of trial. On June 4, 2003, Child Protective Services (CPS) received a referral of neglectful supervision of D.S. by appellant; the referral also showed that appellant was using crack cocaine. On June 5, 2003, CPS removed D.S. from appellant's custody and placed him in foster care after appellant admitted using drugs, but not in D.S.'s presence. CPS removed D.S. because appellant had three other children in foster care, she was continuing to use drugs, her recent drug tests were positive, and she had been arrested for DWI while D.S. was in the car with her.

CPS had previously removed appellant's three other children, J.W., S.A., and M.W., before D.S. was born, after an officer had seen M.W. being held out of a window and suspected that appellant was using drugs. Appellant entered First Choice Program, a program through Community Addiction Treatment Services (CATS), where she stayed for thirteen months. D.S. was born during appellant's stay at First Choice, but he was not immediately removed from appellant's care because he was born drug-free and appellant was cooperating and not using drugs. After being discharged, appellant entered an after-care program where she began to test positive for cocaine. Initially, CPS was promoting family reunification with J.W., S.A., and M.W.; however, after appellant began to test positive, it pursued termination. Appellant's parental rights to J.W., S.A., and M.W. were terminated on September 3, 2003 for placing the children in surroundings—and engaging in conduct—which endangered the children.

In June 2003, appellant re-entered First Choice, but was discharged in August or September 2003 after failing to complete the program. She failed to attend regular meetings, attending only ten out of the forty-eight required meetings.

In September or October 2003, appellant entered Victory Outreach, which appellant initially described to CPS as a rehabilitation program. However, CPS discovered that Victory Outreach did not offer drug programs and was more like a shelter. Appellant complained that she could not complete the Victory Outreach program because of the time deadlines on her case with CPS, because she was having transportation problems, and because Victory Outreach would not let her complete the program the way she wanted. In June 2004, Kathleen Tucker, a CPS caseworker, was informed that appellant was no longer at Victory Outreach and did not officially complete the program.

In May 2004, after leaving Victory Outreach, appellant told CPS that she was trying to get back into CATS a second time. Appellant attended five out of the twenty-four group meetings and two out of the three individual meetings she was required to attend. In July 2004, CPS contacted CATS and learned that appellant had not been regularly attending the meetings and had been discharged.

Appellant often failed to comply with CPS's requests. CPS's service plan required appellant to stay sober for six months, obtain adequate housing, obtain employment, and complete a psychological exam. On several occasions, she refused urine analysis when requested by CPS. Additionally, she failed to provide CPS with pay stubs to show that she was working. Further, the evidence shows that the only part of the service plan that appellant successfully completed was the psychological exam.

In addition, appellant and D.S.'s father, Darrell S., claimed that they were separated, but CPS later found out that they were living together. On September 28, 2004, Susan Marbitt, a CPS caseworker, arrived at Darrell S.'s brother and sister-in-law's house where appellant and Darrell S. were staying, and his sister-in-law would not allow her to look through the house to see if it was adequate for D.S. Appellant also failed to return some phone calls to CPS.

However, appellant made the scheduled visitations with D.S. more often than not. Out of the seventy-three available visits, appellant made forty-two of them, but was late to eight visits.

The trial court terminated appellant's and Darrell S.'s parental rights on November 11, 2004. The trial court found, among other things, that it was in D.S.'s best interest to terminate the parent-child relationship. Darrell S. is not a party to this appeal.

### Statement of Points

■ The State contends that this case should be dismissed because appellant failed to file a statement of points. *See* Tex. Fam.Code Ann. § 263.405(b) (Vernon 2002). Family code section 263.405(b) states that "[n]ot later than the 15th day after the date a final order is signed by the trial judge, a party intending to appeal the order must file with the trial court a statement of the point or points on which the party intends to appeal. The statement

may be combined with a motion for a new trial." *Id.* Historically, this court has held that the failure to file a statement of points is not a defect that prevents this court from addressing issues on appeal.[1]

The State argues that the newly added family code section 263.405(i)[2] shows that the legislature has abrogated this court's previous opinions holding otherwise. Section (i) states that

[t]he appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial. For purposes of this subsection, a claim that a judicial decision is contrary to the evidence or that the evidence is factually or legally insufficient is not sufficiently specific to preserve an issue for appeal.[3]

But section 263.405(i) applies only to an appeal that is filed on or after September 1, 2005.[4] The enacting legislation specifically states that "[a]n appeal of a final order ... filed before the effective date [of September 1, 2005] is governed by the law in effect *on the date the appeal was filed,* and the former law is continued in effect for that purpose."[5] Here, the appeal was filed on November 23, 2004, before the effective date of section 263.405(i); therefore, this appeal is governed by our prior decisions construing the former version of section 263.405, which do not preclude us

---

1. *See In re S.J.G.*, 124 S.W.3d 237, 243 (Tex. App.Fort Worth 2003, pet. denied) (holding complete failure to file statement of points no bar to appeal); *In re W.J.H.*, 111 S.W.3d 707, 712 (Tex.App.-Fort Worth 2003, pet. denied) (holding failure to raise issue in statement of points does not forfeit it on appeal); *In re D.R.L.M.*, 84 S.W.3d 281, 291 (Tex.App.-Fort Worth 2002, pet. denied) (holding failure to timely file statement of points does not forfeit issues on appeal).

2. Act of May 12, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Sess. Law Serv. 332 (Vernon) (to be codified as an amendment of Tex. Fam.Code Ann. § 263.405).

3. *Id.*

4. *Id.*

5. *Id.* (emphasis added).

from considering appellant's point. *See, e.g., In re S.J.G.,* 124 S.W.3d at 243.

## Factual Sufficiency Standard of Review

In her sole point, appellant argues that the evidence is factually insufficient to support the trial court's finding that termination of the parent-child relationship between appellant and D.S. is in D.S.'s best interest.

■■■ A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer,* 455 U.S. 745, 758–59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. TEX. FAM.CODE ANN. § 161.206(b) (Vernon Supp.2004–05); *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex.1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick,* 685 S.W.2d at 20–21; *In re D.T.,* 34 S.W.3d 625, 630 (Tex.App.-Fort Worth 2000, pet. denied) (op. on reh'g).

■■■ In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child. TEX. FAM.CODE ANN. § 161.001 (Vernon 2002); *Richardson v. Green,* 677 S.W.2d 497, 499 (Tex.1984); *Swate v. Swate,* 72 S.W.3d 763, 766 (Tex. App.-Waco 2002, pet.denied). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex.1987).

■■■ Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence. TEX. FAM.CODE ANN. §§ 161.001, 161.206(a); *In re G.M.,* 596 S.W.2d 846, 847 (Tex.1980). This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *G.M.,* 596 S.W.2d at 847; *D.T.,* 34 S.W.3d at 630. It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM.CODE ANN. § 101.007 (Vernon 2002).

■■■ The higher burden of proof in termination cases alters the appellate standard of factual sufficiency review. *In re C.H.,* 89 S.W.3d at 25; *In re C.A.J.,* 122 S.W.3d 888, 892 (Tex.App.Fort Worth 2003, no pet.). "[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." *In re C.H.,* 89 S.W.3d at 25. In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction" that the grounds for termi-

nation were proven. *Id.* Our inquiry here is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the termination of the parent's parental rights would be in the best interest of the child. *Id.* at 28; *see also In re C.A.J.,* 122 S.W.3d at 892.

## Best Interest

■ Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include

(1) the desires of the child,

(2) the emotional and physical needs of the child now and in the future,

(3) the emotional and physical danger to the child now and in the future,

(4) the parental abilities of the individuals seeking custody,

(5) the programs available to assist these individuals to promote the best interest of the child,

(6) the plans for the child by these individuals or by the agency seeking custody,

(7) the stability of the home or proposed placement,

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and

(9) any excuse for the acts or omissions of the parent.

*Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976); *In re M.N.G.,* 147 S.W.3d 521, 539 (Tex.App.Fort Worth 2004, pet. denied). These factors are not exhaustive. Some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. *In re C.H.,* 89 S.W.3d at 27; *In re M.N.G.,* 147 S.W.3d at 539. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a

finding that termination is in the best interest of the child. *In re C.H.,* 89 S.W.3d at 27; *In re M.N.G.,* 147 S.W.3d at 539. On the other hand, the presence of scant evidence relevant to each *Holley* factor will not support such a finding. *In re C.H.,* 89 S.W.3d at 27; *In re M.N.G.,* 147 S.W.3d at 539.

■ In addition to the above, a parent's inability to provide adequate care for the child, lack of parenting skills, poor judgment, and repeated instances of immoral conduct may also be considered when looking at the child's best interest. *In re C.A.J.,* 122 S.W.3d at 893. We now address those factors for which relevant evidence was admitted.

### The Emotional and Physical Danger to the Child Now and in the Future

■ As part of appellant's service plan, CPS wanted appellant to stop using drugs. Appellant failed several drug tests, and as recently as November 2004, refused to take a drug test when asked by CPS. Appellant's drug addiction clearly poses an emotional and physical danger to D.S. now and in the future. *See id.* In addition, appellant was arrested for DWI while D.S. was in the car. Appellant admitted that she drank alcohol, then drove and picked up D.S. Laurie Smith, a CATS clinical supervisor, testified that appellant did not appear to have a stable life and was not able to get a job or obtain adequate housing without help from others. Appellant's unstable life threatens D.S.'s physical wellbeing and may put him at risk of injury. *See id.* at 894.

### The Plans for the Child by the Agency Seeking Custody—The Stability of the Home or Proposed Placement

Tammy Williams, D.S.'s maternal aunt, has expressed an interest in adopting D.S. and his siblings J.W., S.A., and M.W. Williams lives in Arkansas. CPS initiated two home studies on Williams and learned

that Williams would need a lot of financial assistance for daycare and expenses if she adopted the children. At the time of the home studies, Williams was already working two jobs. Williams moved into a three bedroom house from an apartment in hopes that the children would be placed with her. At the time of trial, the adoptive placement was still in the process of being approved by Arkansas officials.

D.S.'s foster parents have expressed an interest in adopting him if the placement with Williams does not work out. D.S. has done well in foster care and was interacting well during family visitation and with his sister M.W.

**The Acts or Omissions of the Parent Which May Indicate that the Existing Parent–Child Relationship is Not a Proper One**

 Evidence of a parent's long-term drug use and unstable lifestyle can support a factfinder's conclusion that termination is in the child's best interest. *Ross v. Tex. Dep't of Protective & Regulatory Servs.*, No. 03–04–00569–CV, 2005 WL 366886, at *7 (Tex.App.Austin Feb.17, 2005, no pet.) (mem.op.). A parent's inability to provide a stable home and remain gainfully employed, failure to successfully complete drug treatment, and failure to comply with her family service plan support a finding that termination is in the best interest of the child. *Id.*

Appellant is an admitted long-term drug user. She has admitted to CPS on several occasions that she is addicted to cocaine. Appellant has also failed numerous drug tests, including ones of which she had prior notice. Appellant has failed to meet the service plan requirements that she stay sober for six months, obtain adequate housing, and obtain employment. Appellant is currently living with Darrell S. and his family, but she does not pay rent or contribute to buying groceries. Although there is evidence that appellant is working at Taco Bell, she has not given CPS her pay stubs to verify her employment. In addition, appellant was arrested for DWI when D.S. was in the car.

Appellant argues that it is in D.S.'s best interest to be placed with her because D.S. has bonded with her; however, there is evidence that D.S. has also bonded well with his foster parents, his health has improved since being placed in foster care, and he is socializing well with his sister, M.W. Appellant claims that if she consistently attended and completed a drug program, she could become a better parent to D.S., and she points out that she did not fail a drug test after September 2003. But appellant has started drug treatment at least four times and never successfully completed any program. Moreover, appellant refused to take any drug tests after September 2003; thus there is no way of knowing whether she has been sober since October 2003 as she claimed. Lastly, appellant points out that she never tested positive when she was at Victory Outreach. But once again, appellant fails to mention that Victory Outreach did not perform drug tests, and CPS did not consider it a drug rehabilitation program. Based upon our review of the entire record, we conclude that a factfinder could have reasonably formed a firm conviction or belief that termination of appellant's rights was in D.S.'s best interest. We hold that the evidence is factually sufficient to support the trial court's finding that termination is in D.S.'s best interest. We overrule appellant's sole point.

**Conclusion**

Having overruled appellant's sole point, we affirm the trial court's order.