COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-402-CV

 

 

IN THE INTEREST OF P.L.S., A CHILD                                                     

 

 

                                              ------------

 

            FROM THE 158TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant Julie W. appeals from the trial court=s order
terminating her parental rights to P.L.S. 
Appellant Lancer S. appeals from the trial court=s order
finding that his appeal from the order terminating his parental rights to
P.L.S. would be frivolous.  Because we
hold that Julie did not show that the delay of appointment of counsel harmed
her and that the trial court did not abuse its discretion in finding that
Lancer=s appeal
on the merits would be frivolous, we affirm the trial court=s
orders.








Procedural History

The trial court terminated the parental rights of
Julie and Lancer to their child P.L.S. 
After a hearing pursuant to Texas Family Code section 263.405, the trial
court signed an order finding that any appeals from the termination would be
frivolous.[2]  Julie and Lancer appealed from that
finding.  Because we previously held that
the trial court abused its discretion in finding Julie=s appeal
frivolous, we reversed the order in part and allowed Julie to appeal from the
trial court=s termination order.

Julie=s Appeal of the Termination
Order

In one point, Julie argues that the trial court
erred by failing to appoint counsel for her at the time of the fourteen-day
adversarial hearing[3]
and that the delay in appointing counsel harmed her.  The order from that adversarial hearing
provides, AThe Court defers its finding
regarding an attorney ad litem for JULIE . . . because she has not appeared in
opposition to this suit or has not established indigency.@  We have already held in a prior order that
Julie appeared in opposition to the suit and that the trial court erred to the extent
that it held otherwise.  We now further
hold that the trial court erred to the extent that it found that Julie had not
established her indigence.













The reporter=s record
from the adversarial hearing shows no inquiry by the trial court at all
regarding the issue of indigence and no communication by the trial court or the
State to the parents that they had a right to appointed counsel if they were
indigent.[4]  The affidavit attached to the State=s
petition provides that Julie was homeless and had no means of caring for the
child.  We therefore conclude that the
only evidence before the court on the issue pointed to Julie=s
indigence.  Consequently, we hold that
the trial court abused its discretion to the extent that it found that Julie
did not establish indigence and by not appointing counsel at that time.[5]

To obtain reversal of the order of termination,
however, Julie must show that the trial court=s
failure to timely appoint counsel probably caused the rendition of an improper
judgment or probably prevented her from properly presenting the case to this
court.[6]  Under the circumstances in this particular
case, Julie cannot meet this burden.

As proof of harm, Julie contends that without a
lawyer, she could not complete proper discovery.  Also, she contends that a lawyer could have
advised her whether her housing was proper and could have asked for an
independent evaluation of P.L.S. in July 2004 after his weight loss, when the
decision to terminate was made.  She also
discusses the State=s cross-examination of her
regarding her not having requested an attorney earlier in the case, P.L.S.=s
attorney=s
recitation in front of the jury of her conversation with Julie in which Julie
admitted that she did not want the child, and the pressure placed on Julie by
the State to voluntarily terminate her rights.








The jury found that Julie had knowingly placed or
knowingly allowed P.L.S. to remain in conditions or surroundings which
endangered his physical or emotional well-being; that she engaged in conduct or
knowingly placed P.L.S. with persons who engaged in conduct which endangered
his physical or emotional well-being; and that she failed to comply with the
provisions of a court order specifically establishing the actions necessary for
her to obtain his return.[7]  Consequently, while P.L.S.=s
attorney=s foray
into her conversations with Julie outside the presence of counsel could have
harmed Julie in a case in which abandonment was alleged, and the State=s
pressure on Julie to terminate her rights, absent the check of legal counsel,
could have harmed Julie in a case in which an affidavit of relinquishment
signed by her was produced, Julie can show no prejudice of the remarks to her
case, considering the grounds.

To the extent that this evidence was relevant to
the jury=s best
interest determination, we note that even without it, the evidence
overwhelmingly supported the jury=s
determination that termination of Julie=s
parental rights to P.L.S. was in his best interest.[8]








Similarly, while the cross-examination by the
State of Julie regarding her knowledge that she was entitled to counsel and her
delay in asking for counsel was aggressive (and yet we note still did not
reveal that Julie knew she was entitled to free counsel), we cannot say
that the dialogue resulted in an improper judgment because the dialogue does
not go to any of the conduct grounds or the best interest ground, nor does it
show that her appeal was somehow hampered by the delay.[9]  Additionally, while Julie complains of
incomplete discovery, she does not explain how it harmed her, and indeed the
record shows that the parties had a Rule 11 agreement entitling the parents to
everything in the State=s file and everything the State later
received as evidence and that the trial court excluded evidence at trial that
was challenged as not being provided to the parents under the agreement.

We are left then with Julie=s
contentions that with a lawyer, she would have been able to cure her housing
problems and get a different doctor to evaluate P.L.S. after his loss of
weight.  Based on our review of the
record, we must agree with the State that Julie Ahad lots
of professional assistance with regard to what she needed to do to maintain
suitable housing and to obtain employment and to take reasonable care of her
child.@








Even without a lawyer, Julie managed to regain full
possession of her son from the State on June 21, 2004.  But he was removed less than four weeks later
after being housed in a trailer home in Texas in the middle of July with no
electricity, after being exposed to dangerous cleaners within his reach on the
floor after Julie was specifically warned to move the cleaners out of his
reach, and, most critically, after he failed to thrive in his parents=
care.  The physician who examined P.L.S.
testified that he lost twelve ounces between June 25, 2004 and July 15, 2004
and that his symptoms indicated that he was chronically malnourished.  She testified that he was in danger because
left unchecked, the malnourishment would eventually stop the development of his
height and brain.  She also testified
that she told the parents to give him soy milk and Carnation Instant Breakfast
to boost his weight.  Julie and Lancer
chose to give him more whole milk, despite the concerns that Julie had voiced
to the doctor that the whole milk was giving him diarrhea, without the
supplement of the instant breakfast.  By
July 22, after P.L.S. had been back with his foster family for six days, he had
regained nine ounces, causing the doctor to conclude that Ahe was
really not being fed@ while he was in his parents= care.








Further, although a lawyer was appointed for
Julie in October 2004, at the time of trial in mid-December 2004, she still did
not have stable employment, she had been living with her sister for only a
couple of days, and she had not completed her GED, despite the trial court=s order
requiring, among other things, stable housing, stable employment, and the
completion of her GED.  Consequently,
based on our review of the record, we cannot conclude that Julie has shown that
the trial court=s failure to timely appoint
counsel probably caused the rendition of an improper judgment.[10]

Lancer=s Appeal of Frivolous Finding








In six points, Lancer argues that section 263.405
violates the equal protection and due process provisions of the state and
federal constitutions and his right to effective assistance of counsel under
the federal constitution and section 107.103(A)(1) of the Texas Family
Code.  In a supplemental point provided
at our request, Lancer argues that the statute unconstitutionally interferes
with our jurisdiction under the state constitution.  His points focus on his inability to have a
reporter=s record
to frame his arguments at the hearing on frivolousness.  Since this case was originally briefed,
however, this court has held that an appellate court has the authority to order
the preparation of a record of all the evidence in a termination case when
necessary to review a trial court=s
determination that an appeal raising a factual sufficiency complaint is
frivolous.[11]  Additionally, we have already received the
complete record in this case, having allowed Julie to appeal the termination
order on the merits.[12]  Because we have obtained and reviewed the
trial record, our ability to address the merits of Lancer=s case
on appeal is not hampered, and he has not been denied the right to a meaningful
appeal.  Accordingly, his lack of access
to the reporter=s record at the frivolousness
hearing caused him no harm because it has not limited our review of the
frivolousness finding or his complaints raised in his motion for new trial.[13]  We therefore overrule his points.








Furthermore, after reviewing the trial record, we
cannot say that the trial court abused its discretion by determining that
Lancer=s appeal
would be frivolous.  Lancer=s motion
for new trial preserved his complaints that the evidence is legally and
factually insufficient to support findings under section 161.001(D), (E), and
(O),[14]
that is, findings that he had knowingly placed or knowingly allowed P.L.S. to
remain in conditions or surroundings which endangered P.L.S.=s
physical or emotional well-being; that he engaged in conduct or knowingly
placed P.L.S. with persons who engaged in conduct which endangered P.L.S.=s
physical or emotional well-being; and that he failed to comply with the
provisions of a court order specifically establishing the actions necessary for
him to obtain P.L.S.=s return.[15]








But our review of the record shows that like
Julie, Lancer did not fully comply with the trial court=s order
specifically establishing the actions necessary for him to obtain P.L.S.=s
return, he housed P.L.S. in a hot trailer with no electricity in the middle of
July, he was a primary caretaker during the time of P.L.S.=s quick,
dramatic weight loss, he did not follow the doctor=s
instructions thereafter to help P.L.S. regain his weight, and he did not ensure
that P.L.S.=s environment was free from
hazards.  There was also evidence that he
had behaved violently with Julie during the pregnancy and after the second
removal.  Additionally, while Lancer
raises tentative points in his brief regarding possible ineffective assistance
of counsel and possible error in the delay of appointment of counsel, nothing
in the record indicates that Lancer could ultimately succeed on appeal with
these claims.[16]  Consequently, we agree that any appeal from
the trial court=s order terminating Lancer=s
parental rights would not present a substantial question for review.[17]

Accordingly, we affirm the trial court=s order
terminating Julie=s parental rights to P.L.S. and
the trial court=s order finding that Lancer=s appeal
from the  order terminating his parental
rights to P.L.S. would be frivolous. 

 

PER CURIAM

PANEL F:    DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED:  August 10, 2006











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Fam. Code Ann. ' 263.405(g) (Vernon Supp. 2005).





[3]See id. '
262.201.





[4]See id. ' 107.013(a)(1) (AIn a suit filed by a governmental entity in which
termination of the parent‑child relationship is requested, the court shall
appoint an attorney ad litem to represent the interests of:  (1) an indigent parent of the child who
responds in opposition to the termination . . . .@) (emphasis added); see also In re M.S., 115
S.W.3d 534, 544-45 (Tex. 2003) (applying the criminal standard for effective
assistance of counsel to termination case); Oliver v. State, 872 S.W.2d
713, 715-16 (Tex. Crim. App. 1994) (providing,

 

The Texas statutory scheme, consistent with Sixth
Amendment requirements, thus plainly imposes upon trial judges the . . .
obligation to conduct such inquiry as may be necessary to determine whether an
accused desires and is eligible for the appointment of an attorney.

 

The appearance of a criminal defendant in court
without counsel, therefore, necessitates an examination by the trial judge to
assure that the defendant is actually aware of his right to retain an attorney
and to discover whether he intends to do so. 
Such a colloquy between defendant and judge is not a part of the adversary
process, but is a preliminary matter necessary for the judge to discharge
independent duties of his office.).

 

 





[5]See In re J.M.E., No. 02-04-00198-CV, 2005 WL 3081642, at *5 (Tex. App.CFort
Worth Nov. 17, 2005, no pet.) (mem. op.); see also Oliver, 872 S.W.2d at
715-16.





[6]See Tex. R. App. P. 44.1(a); Beam v.
A.H. Chaney, Inc., 56 S.W.3d 920, 924 (Tex. App.CFort
Worth 2001, pet. denied); J.M.E., No. 02-04-00198-CV, 2005 WL 3081642,
at *5.





[7]Tex. Fam. Code Ann. ' 161.001(1)(D), (E), (O) (Vernon Supp. 2005).





[8]See Holley v. Adams, 544 S.W.2d 367, 371‑72 (Tex. 1976) (providing nonexclusive list
of factors that jurors use in determining best interest); see also Tex. R. App. P. 44.1(a).





[9]See Tex. R. App. P. 44.1(a).





[10]See Tex. R. App. P. 44.1(a); Beam,
56 S.W.3d at 924; J.M.E., No. 02-04-00198-CV, 2005 WL 3081642, at *5.





[11]In re M.R.J.M.,
193 S.W.3d 670, 674 (Tex. App.CFort Worth 2005, order).





[12]The parties were notified that this court had received
the reporter=s record in November 2005.





[13]See Tex. R. App. P.
44.1(a).





[14]See In re D.S.,
176 S.W.3d 873, 876-77 (Tex. App.CFort Worth 2005, no pet.) (holding that the absence of
a statement of points does not preclude our consideration of appellate issues
in termination appeals filed before September 1, 2005).





[15]Tex. Fam. Code Ann. ' 161.001(1)(D), (E), (O).





[16]See Tex. R. App. P.
44.1(a).





[17]See Tex. Fam. Code Ann. ' 263.405(d); Tex.
Civ. Prac. & Rem. Code Ann. ' 13.003(b) (Vernon 2002); see also M.R.J.M.,
193 S.W.3d at 672 n.7.