In the Interest of P.L.S., a Child

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-402-CV

IN THE INTEREST OF P.L.S., A CHILD 

------------

FROM THE 158TH
 DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Julie W. appeals from the trial court’s order terminating her parental rights to P.L.S.  Appellant Lancer S. appeals from the trial court’s order finding that his appeal from the order terminating his parental rights to P.L.S. would be frivolous.  Because we hold that Julie did not show that the delay of appointment of counsel harmed her and that the trial court did not abuse its discretion in finding that Lancer’s appeal on the merits would be frivolous, we affirm the trial court’s orders.

Procedural History

The trial court terminated the parental rights of Julie and Lancer to their child P.L.S.  After a hearing pursuant to Texas Family Code section 263.405, the trial court signed an order finding that any appeals from the termination would be frivolous.
(footnote: 2)  Julie and Lancer appealed from that finding.  Because we previously held that the trial court abused its discretion in finding Julie’s appeal frivolous, we reversed the order in part and allowed Julie to appeal from the trial court’s termination order.

Julie’s Appeal of the Termination Order

In one point, Julie argues that the trial court erred by failing to appoint counsel for her at the time of the fourteen-day adversarial hearing
(footnote: 3) and that the delay in appointing counsel harmed her.  The order from that adversarial hearing provides, “The Court defers its finding regarding an attorney ad litem for JULIE . . . because she has not appeared in opposition to this suit or has not established indigency.”  We have already held in a prior order that Julie appeared in opposition to the suit and that the trial court erred to the extent that it held otherwise.  We now further hold that the trial court erred to the extent that it found that Julie had not established her indigence.

The reporter’s record from the adversarial hearing shows no inquiry by the trial court at all regarding the issue of indigence and no communication by the trial court or the State to the parents that they had a right to appointed counsel if they were indigent.
(footnote: 4)  The affidavit attached to the State’s petition provides that Julie was homeless and had no means of caring for the child.  We therefore conclude that the only evidence before the court on the issue pointed to Julie’s indigence.  Consequently, we hold that the trial court abused its discretion to the extent that it found that Julie did not establish indigence and by not appointing counsel at that time.
(footnote: 5)
 To obtain reversal of the order of termination, however, Julie must show that the trial court’s failure to timely appoint counsel probably caused the rendition of an improper judgment or probably prevented her from properly presenting the case to this court.
(footnote: 6)  Under the circumstances in this particular case, Julie cannot meet this burden.

As proof of harm, Julie contends that without a lawyer, she could not complete proper discovery.  Also, she contends that a lawyer could have advised her whether her housing was proper and could have asked for an independent evaluation of P.L.S. in July 2004 after his weight loss, when the decision to terminate was made.  She also discusses the State’s cross-examination of her regarding her not having requested an attorney earlier in the case, P.L.S.’s attorney’s recitation in front of the jury of her conversation with Julie in which Julie admitted that she did not want the child, and the pressure placed on Julie by the State to voluntarily terminate her rights.

The jury found that Julie had knowingly placed or knowingly allowed P.L.S. to remain in conditions or surroundings which endangered his physical or emotional well-being; that she engaged in conduct or knowingly placed P.L.S. with persons who engaged in conduct which endangered his physical or emotional well-being; and that she failed to comply with the provisions of a court order specifically establishing the actions necessary for her to obtain his return.
(footnote: 7)  Consequently, while P.L.S.’s attorney’s foray into her conversations with Julie outside the presence of counsel could have harmed Julie in a case in which abandonment was alleged, and the State’s pressure on Julie to terminate her rights, absent the check of legal counsel, could have harmed Julie in a case in which an affidavit of relinquishment signed by her was produced, Julie can show no prejudice of the remarks to 
her
 case, considering the grounds.

To the extent that this evidence was relevant to the jury’s best interest determination, we note that even without it, the evidence overwhelmingly supported the jury’s determination that termination of Julie’s parental rights to P.L.S. was in his best interest.
(footnote: 8)
 Similarly, while the cross-examination by the State of Julie regarding her knowledge that she was entitled to counsel and her delay in asking for counsel was aggressive (and yet we note still did not reveal that Julie knew she was entitled to 
free
 counsel), we cannot say that the dialogue resulted in an improper judgment because the dialogue does not go to any of the conduct grounds or the best interest ground, nor does it show that her appeal was somehow hampered by the delay.
(footnote: 9)  Additionally, while Julie complains of incomplete discovery, she does not explain how it harmed her, and indeed the record shows that the parties had a Rule 11 agreement entitling the parents to everything in the State’s file and everything the State later received as evidence and that the trial court excluded evidence at trial that was challenged as not being provided to the parents under the agreement.

We are left then with Julie’s contentions that with a lawyer, she would have been able to cure her housing problems and get a different doctor to evaluate P.L.S. after his loss of weight.  Based on our review of the record, we must agree with the State that Julie “had lots of professional assistance with regard to what she needed to do to maintain suitable housing and to obtain employment and to take reasonable care of her child.”

Even without a lawyer, Julie managed to regain full possession of her son from the State on June 21, 2004.  But he was removed less than four weeks later after being housed in a trailer home in Texas in the middle of July with no electricity, after being exposed to dangerous cleaners within his reach on the floor after Julie was specifically warned to move the cleaners out of his reach, and, most critically, after he failed to thrive in his parents’ care.  The physician who examined P.L.S. testified that he lost twelve ounces between June 25, 2004 and July 15, 2004 and that his symptoms indicated that he was chronically malnourished.  She testified that he was in danger because left unchecked, the malnourishment would eventually stop the development of his height and brain.  She also testified that she told the parents to give him soy milk and Carnation Instant Breakfast to boost his weight.  Julie and Lancer chose to give him more whole milk, despite the concerns that Julie had voiced to the doctor that the whole milk was giving him diarrhea, without the supplement of the instant breakfast.  By July 22, after P.L.S. had been back with his foster family for six days, he had regained nine ounces, causing the doctor to conclude that “he was really not being fed” while he was in his parents’ care.

Further, although a lawyer was appointed for Julie in October 2004, at the time of trial in mid-December 2004, she still did not have stable employment, she had been living with her sister for only a couple of days, and she had not completed her GED, despite the trial court’s order requiring, among other things, stable housing, stable employment, and the completion of her GED.  Consequently, based on our review of the record, we cannot conclude that Julie has shown that the trial court’s failure to timely appoint counsel probably caused the rendition of an improper judgment.
(footnote: 10)
Lancer’s Appeal of Frivolous Finding

In six points, Lancer argues that section 263.405 violates the equal protection and due process provisions of the state and federal constitutions and his right to effective assistance of counsel under the federal constitution and section 107.103(A)(1) of the Texas Family Code.  In a supplemental point provided at our request, Lancer argues that the statute unconstitutionally interferes with our jurisdiction under the state constitution.  His points focus on his inability to have a reporter’s record to frame his arguments at the hearing on frivolousness.  Since this case was originally briefed, however, this court has held that an appellate court has the authority to order the preparation of a record of all the evidence in a termination case when necessary to review a trial court’s determination that an appeal raising a factual sufficiency complaint is frivolous.
(footnote: 11)  Additionally, we have already received the complete record in this case, having allowed Julie to appeal the termination order on the merits.
(footnote: 12)  Because we have obtained and reviewed the trial record, our ability to address the merits of Lancer’s case on appeal is not hampered, and he has not been denied the right to a meaningful appeal.  Accordingly, his lack of access to the reporter’s record at the frivolousness hearing caused him no harm because it has not limited our review of the frivolousness finding or his complaints raised in his motion for new trial.
(footnote: 13)  We therefore overrule his points.

Furthermore, after reviewing the trial record, we cannot say that the trial court abused its discretion by determining that Lancer’s appeal would be frivolous.  Lancer’s motion for new trial preserved his complaints that the evidence is legally and factually insufficient to support findings under section 161.001(D), (E), and (O),
(footnote: 14) that is, findings that he had knowingly placed or knowingly allowed P.L.S. to remain in conditions or surroundings which endangered P.L.S.’s physical or emotional well-being; that he engaged in conduct or knowingly placed P.L.S. with persons who engaged in conduct which endangered P.L.S.’s physical or emotional well-being; and that he failed to comply with the provisions of a court order specifically establishing the actions necessary for him to obtain P.L.S.’s return.
(footnote: 15)
 But our review of the record shows that like Julie, Lancer did not fully comply with the trial court’s order specifically establishing the actions necessary for him to obtain P.L.S.’s return, he housed P.L.S. in a hot trailer with no electricity in the middle of July, he was a primary caretaker during the time of P.L.S.’s quick, dramatic weight loss, he did not follow the doctor’s instructions thereafter to help P.L.S. regain his weight, and he did not ensure that P.L.S.’s environment was free from hazards.  There was also evidence that he had behaved violently with Julie during the pregnancy and after the second removal.  Additionally, while Lancer raises tentative points in his brief regarding possible ineffective assistance of counsel and possible error in the delay of appointment of counsel, nothing in the record indicates that Lancer could ultimately succeed on appeal with these claims.
(footnote: 16)  Consequently, we agree that any appeal from the trial court’s order terminating Lancer’s parental rights would not present a substantial question for review.
(footnote: 17)
 Accordingly, we affirm the trial court’s order terminating Julie’s parental rights to P.L.S. and the trial court’s order finding that Lancer’s appeal from the  order terminating his parental rights to P.L.S. would be frivolous. 

PER CURIAM

PANEL F: DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED:  August 10, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See 
Tex. Fam. Code Ann. § 
263.405(g) (Vernon Supp. 2005).

3:
See id.
 § 262.201.

4:
See id.
 
§ 107.013(a)(1) (“In a suit filed by a governmental entity in which termination of the parent-child relationship is requested, the court 
shall
 appoint an attorney ad litem to represent the interests of:  (1) an indigent parent of the child who responds in opposition to the termination . . . .”) (emphasis added); 
see also In re M.S.
, 115 S.W.3d 534, 544-45 (Tex. 2003) (applying the criminal standard for effective assistance of counsel to termination case); 
Oliver v. State
, 872 S.W.2d 713, 715-16 (Tex. Crim. App. 1994) (providing,

The Texas statutory scheme, consistent with Sixth Amendment requirements, thus plainly imposes upon trial judges the . . . obligation to conduct such inquiry as may be necessary to determine whether an accused desires and is eligible for the appointment of an attorney.

The appearance of a criminal defendant in court without counsel, therefore, necessitates an examination by the trial judge to assure that the defendant is actually aware of his right to retain an attorney and to discover whether he intends to do so.  Such a colloquy between defendant and judge is not a part of the adversary process, but is a preliminary matter necessary for the judge to discharge independent duties of his office.).

5:
See In re J.M.E.
, No. 02-04-00198-CV, 2005 WL 3081642, at *5 (Tex. App.—Fort Worth Nov. 17, 2005, no pet.) (mem. op.); 
see also Oliver
, 872 S.W.2d at 715-16.

6:
See
 
Tex. R. App. P
. 44.1(a); 
Beam v. A.H. Chaney
,
 Inc.
, 56 S.W.3d 920, 924 (Tex. App.—Fort Worth 2001, pet. denied); 
J.M.E.
, No. 02-04-00198-CV, 2005 WL 3081642, at *5.

7:
Tex. Fam. Code Ann.
 § 161.001(1)(D), (E), (O) (Vernon Supp. 2005).

8:
See Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976) (providing nonexclusive list of factors that jurors use in determining best interest); 
see also 
Tex. R. App. P.
 44.1(a).

9:
See
 
Tex. R. App. P.
 44.1(a).

10:
See
 
Tex. R. App. P
. 44.1(a); 
Beam
, 56 S.W.3d at 924; 
J.M.E.
, No. 02-04-00198-CV, 2005 WL 3081642, at *5.

11:
In re M.R.J.M.
, 193 S.W.3d 670, 674 (Tex. App.—Fort Worth 2005, order).

12:
The parties were notified that this court had received the reporter’s record in November 2005.

13:
See 
Tex. R. App. P.
 44.1(a).

14:
See In re D.S.
, 176 S.W.3d 873, 876-77 (Tex. App.—Fort Worth 2005, no pet.) (holding that the absence of a statement of points does not preclude our consideration of appellate issues in termination appeals filed before September 1, 2005).

15:
Tex. Fam. Code Ann.
 § 161.001(1)(D), (E), (O).

16:
See 
Tex. R. App. P.
 44.1(a).

17:
See 
Tex. Fam. Code Ann.
 § 263.405(d); 
Tex. Civ. Prac. & Rem. Code Ann.
 § 13.003(b) (Vernon 2002); 
see also M.R.J.M.
, 193 S.W.3d at 672 n.7.