COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-06-130-CV

 

 

IN THE INTEREST OF 

 

 

R.H. AND J.A.H.,
CHILDREN                                                                  

 

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant L.H. appeals from
the trial court=s judgment
terminating her parental rights to her minor children, R.H. and J.A.H.  In eight points, L.H.  argues that the evidence is legally and
factually insufficient to support the findings made the basis of the trial
court=s judgment.  We affirm.

                                      Standards of Review








Termination of parental
rights is a drastic remedy and is of such weight and gravity that due process
requires the petitioner to justify termination by clear and convincing
evidence.  Tex. Fam. Code Ann. '' 161.001, 161.206(a) (Vernon Supp. 2006); In re J.F.C., 96
S.W.3d 256, 263 (Tex. 2002).  This
intermediate standard falls between the preponderance standard of ordinary
civil proceedings and the reasonable doubt standard of criminal
proceedings.  In re G.M., 596
S.W.2d 846, 847 (Tex. 1980); In re K.W., 138 S.W.3d 420, 425 (Tex. App.CFort Worth 2004, pet. denied). 
It is defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@  Tex.
Fam. Code Ann. ' 101.007
(Vernon 2002).








The higher burden of proof in
termination cases elevates the appellate standard of legal sufficiency
review.  J.F.C., 96 S.W.3d at
265.  The traditional no‑evidence
standard does not adequately protect the parent=s constitutional interests.  Id.  In reviewing the evidence for legal
sufficiency in parental termination cases, we must determine whether the
evidence is such that a fact-finder could reasonably form a firm belief or
conviction that the grounds for termination were proven.  Id. at 265‑66.  We must review all the evidence in the light
most favorable to the finding and judgment.  Id. at 266.  This means that we must assume that the
fact-finder resolved any disputed facts in favor of its finding if a reasonable
fact-finder could have done so.  Id.  We must also disregard all evidence that a
reasonable fact-finder could have disbelieved. 
Id.  We must consider,
however, undisputed evidence even if it is contrary to the finding.  Id. 
That is, we must consider evidence favorable to termination if a
reasonable fact-finder could, and disregard contrary evidence unless a
reasonable fact-finder could not.  City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).

This higher burden of proof
also elevates the appellate standard of factual sufficiency review.  In re C.H., 89 S.W.3d 17, 25 (Tex.
2002).  A[A] finding that must be based on clear and convincing evidence cannot
be viewed on appeal the same as one that may be sustained on a mere
preponderance.@  Id. 
In considering whether the evidence of termination rises to the level of
being clear and convincing, we must determine whether the evidence is such that
a fact-finder could reasonably form a firm belief or conviction that the
grounds for termination were proven.  Id.








The distinction between legal
and factual sufficiency lies in how we review the evidence.  J.F.C., 96 S.W.3d at 266.  In a factual sufficiency review, in
determining whether the evidence is such that a fact-finder could reasonably
form a firm belief or conviction that its finding was true, we must consider
whether disputed evidence is such that a reasonable fact-finder could not have
resolved it in favor of the finding.  Id.  If, in light of the entire record, the
disputed evidence that a reasonable fact-finder could not have credited in
favor of the finding is so significant that a fact-finder could not reasonably
have formed a firm belief or conviction in the truth of its finding, then the
evidence is factually insufficient.  Id.

                                   Summary of the Evidence

L.H. is the mother of R.H.
and J.A.H.  In 2002, when R.H. was two
years old, the Department of Regulatory and Protective Services (Athe Department@)
investigated a report that R.H. had been severely beaten.  Azura Johnson, a Department caseworker,
testified that R.H. had more than thirty bleeding lashmarks on his thighs.  She also observed several scars from old
injuries and what appeared to be multiple cigarette burn marks on his
skin.  R.H. told Johnson that his mother
had beat him the night before and that she Asometimes takes her cigarette and does like this,@ pantomiming a cigarette burn. 
Johnson said that R.H. appeared to be malnourished.  Johnson interviewed L.H., who admitted that
she had whipped R.H. the day before for stealing a peppermint.  At trial, L.H. admitted that she caused R.H.=s 2002 injuries by beating him with a belt and that the scars from the
beating were still visible two years later. 
But she testified that what Johnson identified as cigarette burns were
chickenpox lesions. 








The Department filed a
petition to terminate Appellant=s parental rights, removed R.H. from L.H.=s custody, and placed him in foster care.  In March 2003, L.H. gave birth to J.A.H.  The Department immediately removed J.A.H.
from L.H.=s custody,
placed her in a foster home, and amended its petition to add J.A.H. 

In December 2003, the trial
court entered an order granting joint managing conservatorship of R.H. and
J.A.H. to L.H. and her mother, Cynthia L. 
The order gave Cynthia the right to physical possession and to establish
the children=s legal
domicile.[2]









Also in December 2003, L.H.
was placed on five years= deferred
adjudication community supervision for charges stemming from R.H.=s 2002 injuries.  The trial
court proceeded to adjudicate L.H.=s guilt in November 2005 after L.H. tested positive for cocaine and
marijuana use and was arrested for driving with a suspended license.  The trial court sentenced L.H. to two years= incarceration, and she was serving her sentence at the time of the
termination trial.  She testified that
her earliest possible release date was June 2006 and her latest possible
release date was July 2007.[3]


In May 2005, another
Department caseworker, Tammy Brooks, investigated another abuse report
pertaining to R.H.  Brooks observed a
large bruise on R.H.=s
temple.  R.H. told her that L.H. hit him
with a hairbrush.  L.H. told Brooks that
R.H. hit his head on the lock of a gate. 
Brooks concluded that R.H. was telling the truth.  The State filed criminal charges against
L.H.,but later dismissed them.  Brooks
also discovered that R.H. and J.A.H. were living with L.H. instead of with
Cynthia, which the State argues violated the terms of the trial court=s order of joint managing conservatorship.[4]









At the time of trial, L.H.=s grandmother, Annie M., was caring for the children.  Department caseworker Rita Thompson testified
that Annie was seventy years old, and she expressed concern that Annie would
not be able to handle R.H.=s Aescalating
behavior.@  Thompson testified that the Department=s long-term plan for the children was to terminate L.H.=s parental rights and place the children for adoption. 

L.H. testified that she
completed a service plan in connection with the Department=s original termination petition, including a parenting class, an anger
management class, a psychological evaluation, and counseling with R.H.  She said she began using marijuana frequently
when she was nineteen and abused cocaine for six months in 2005.  She admitted that she used drugs while caring
for the children.  After she tested
positive for marijuana and cocaine, she attended and completed a drug
rehabilitation program as a condition of her continued deferred adjudication
community supervision, and she testified that she continued to attend
Alcoholics Anonymous and Narcotics Anonymous meetings in prison after the trial
court revoked her community supervision and adjudicated guilt.  L.H. testified that she had been clean for a
year at the time of trial.  She said that
while she was in prison, she sent letters and drawings to the children Aall the time.@  When the children=s attorney ad litem asked, ASo you admit that what you have, that your conduct has placed both of
your kiddos in danger?,@ L.H.
answered, AYes.@  

The termination case was
tried to the bench.  The trial court
found by clear and convincing evidence that








$                  
L.H. knowingly placed or knowingly allowed the
children to remain in conditions or surroundings which endanger the physical or
emotional well-being of the children,

 

$                  
L.H. engaged in conduct or knowingly placed the
children with persons who engaged in conduct which endangers the physical or
emotional well-being of the children,

 

$                  
L.H. constructively abandoned
the children, and

$                  
Termination was in the
children=s best interest.

See Tex. Fam. Code Ann. ' 161.001 (setting out potential grounds for termination).  The trial court terminated L.H.=s parental rights, and this appeal followed.

                                             Discussion

In eight points, L.H.
challenges the legal and factual sufficiency of the evidence to support each of
the trial court=s four
findings.

In proceedings to terminate
the parent‑child relationship brought under section 161.001 of the Texas
Family Code, the petitioner must establish one of the acts or omissions
enumerated under subdivision (1) of the statute and must also prove that
termination is in the best interest of the child. Id.; In re J.L.,
163 S.W.3d 79, 84 (Tex. 2005).  Both
elements must be established; termination may not be based solely on the best
interest of the child as determined by the trier of fact.  Tex. Dep=t of Human Servs. v. Boyd, 727 S.W.2d
531, 533 (Tex. 1987).








The relevant inquiry for
termination under section 161.001(1)(E), the endangering-conduct ground, is
whether the endangerment was the direct result of the parent=s conduct, including acts, omissions, or failures to act.[5]  Tex.
Fam. Code Ann. '
161.001(1)(E); In re J.T.G., 121 S.W.3d 117, 125 (Tex. App.CFort Worth 2003, no pet.). 
Termination must be based on more than a single act or omission; it
requires a voluntary, deliberate, and conscious course of conduct.  J.T.G., 121 S.W.3d at 125.  However, it is not necessary that the parent=s conduct be directed at the child or that the child actually suffer
injury.  Boyd, 727 S.W.2d at 533; J.T.G.,
121 S.W.3d at 125.








The specific danger to the
child=s well‑being may be inferred from parental misconduct alone,
including conduct that subjects the child to a life of uncertainty and
instability.  Boyd, 727 S.W.2d at
533; In re R.W., 129 S.W.3d 732, 738-39 (Tex. App.CFort Worth 2004, pet. denied) (considering drug and alcohol abuse in
endangerment finding).  Drug use and its
effect on a parent=s life and
ability to parent may establish an endangering course of conduct.  R.W., 129 S.W.3d at 739; J.T.G.,
121 S.W.3d at 125‑26; see also In re S.D., 980 S.W.2d 758, 763
(Tex. App.CSan Antonio
1998, pet. denied) (holding that illegal drug use and frequent parole
violations provide sufficient evidence of endangerment).  A parent=s decision to engage in illegal drug use during the pendency of a
termination suit, when the parent is at risk of losing a child, supports a
finding that the parent engaged in conduct that endangered the child=s physical or emotional well‑being.  In re J.J.O., No. 02‑03‑00267‑CV,
2004 WL 966317, at *4 (Tex. App.CFort Worth May 6, 2004, no pet.) (mem. op.).

Evidence of criminal conduct,
convictions, and imprisonment is also relevant to the issue of whether a parent
engaged in an endangering course of conduct. 
J.T.G., 121 S.W.3d at 133. 
While imprisonment alone does not constitute an endangering course of conduct,
it is a fact properly considered on the endangerment issue.  Boyd, 727 S.W.2d at 533-34; R.W.,
129 S.W.3d at 743‑44.  However, the
relationship of the parent and child, as well as efforts to improve or enhance
parenting skills, are also relevant in determining whether a parent=s conduct results in Aendangerment@ under
section 161.001(1)(E), even when the parent is incarcerated.  In re D.T., 34 S.W.3d 625, 640 (Tex.
App.CFort Worth 2000, pet. denied).








In this case, L.H. admitted
to beating R.H. with a belt in 2002Ca beating that left R.H. with over thirty bleeding lashmarks and scars
visible two years later and for which L.H. was in prison at the time of trialCand to using cocaine and marijuana while the children were in her care
and custody.  She also admitted that her
conduct endangered both children. 
Considering all of the evidence, including the undisputed evidence of
L.H.=s completion of parts of the service plan and her participation in a
drug treatment program, in the light most favorable to the judgment, we hold
that a fact-finder could reasonably form a firm belief or conviction that L.H.
knowingly engaged in conduct that endangered the children=s well being.  Thus, the
evidence was legally sufficient to support the trial court=s finding under section 161.001(1)(E) of the family code.  Moreover, the disputed evidence that a
reasonable fact finder could not have credited in favor of the finding is not
so significant that it precludes a reasonable fact finder from forming a firm
belief or conviction that L.H. knowingly engaged in conduct that endangered the
children=s well being; thus, the evidence is also factually sufficient.








With regard to the children=s best interest, a trial court may consider several nonexclusive
factors, including the emotional and physical danger to the child now and in
the future and the acts or omissions of the parent that may indicate that the
existing parent‑child relationship is not a proper one.  Holley v. Adams, 544 S.W.2d 367, 371‑72
(Tex. 1976); In re M.N.G., 147 S.W.3d 521, 539 (Tex. App._Fort
Worth 2004, pet. denied).  A parent=s drug use supports a finding that termination is in the best interest
of the child.  In re D.S., 176
S.W.3d 873, 879 (Tex. App.CFort Worth 2005, no pet.).  A
trial court may consider incarceration as a best-interest factor.  In re J.B.W., 99 S.W.3d 218, 229 (Tex.
App.CFort Worth 2003, pet. denied). 
Undisputed evidence of just one factor may be sufficient in a particular
case to support a finding that termination is in the best interest of the
child.  In re M.N.G., 147 S.W.3d
at 539.

In this case, the undisputed
evidence showed that L.H. abused marijuana and cocaine while the children were
in her care and custody and that she was incarcerated at the time of trial for
beating R.H.  We therefore hold that the
that the evidence is legally and factually sufficient to support the trial
court=s finding that termination of L.H.=s parental rights was in the children=s best interest.

We overrule L.H.=s third, fourth, seventh, and eighth points.  The trial court=s findings challenged by those points are sufficient to support
termination; therefore, we need not consider Appellant=s remaining points, in which she challenges the legal and factual
sufficiency of the evidence to support the trial court=s other findings.  See Tex. R. App. P. 47.1.

We affirm the trial court=s order terminating L.H.=s parental rights to R.H. and J.A.H.

 

 

ANNE GARDNER

JUSTICE

 

PANEL B:   LIVINGSTON, GARDNER, and MCCOY, JJ.

 








DELIVERED:  December 14, 2006











[1]See Tex. R. App. P. 47.4.





[2]The
State argues that the order precluded L.H. from having visitation with the
children unless supervised by Cynthia. 
In fact, the order provided that L.H. Ashall
have reasonable visitation and access to the Children, as arranged and
supervised by the Managing Conservator.@  The same order made L.H. a managing
conservator; thus, if the trial court intended the order to have the effect
argued by the State, the order was, at best, poorly worded and ambiguous.





[3]The
State asserts that L.H. also Aaccumulated three felony car
thefts@ in
2004.  But the record shows that it was
J.A.H.=s
purported father, not L.H., who pleaded guilty to three counts of car theft in
2004.  





[4]Yet
again, the State=s
representation of the facts is not supported by the record.  The order appointing L.H. and Cynthia joint
managing conservators does not specify a particular residence for the children;
rather, it confers on Cynthia the right to determine the children=s
domicile.





[5]Under
section 161.001(1)(E), the court may order termination of the parent-child
relationship if the court finds by clear and convincing evidence Athat
the parent has engaged in conduct . . . which endangers the physical or
emotional well-being of the child.@  Tex.
Fam. Code Ann. '
161.001(1)(E).