COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-404-CV

 

 

IN THE INTEREST OF J.A.B.,                                                                 



A
CHILD

 

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Jerri B. appeals
the trial court=s order
terminating her parental rights to her daughter J.A.B.  We affirm.   








In early 2005, the Department
of Family and Protective Services (the State) removed one of Jerri=s older children from her care and learned that Jerri was pregnant
with J.A.B.  Throughout the pregnancy,
Jerri tested positive for methamphetamine five times, and the last test
occurred two months before J.A.B. was born. 
Although neither J.A.B. nor Jerri tested positive for drugs at J.A.B.=s birth, J.A.B. went home with her foster family after an eight-day
hospitalization.  After J.A.B.=s removal, Jerri refused to submit to the majority of the State=s drug tests and only participated in a few of the offered services.  The trial court terminated Jerri=s parental rights to J.A.B. on October 2, 2006.[2]          In
five issues, Jerri contends that the trial court improperly rendered the order
of termination.  In her first four
issues, Jerri challenges the legal and factual sufficiency of the evidence to
support the trial court=s finding
that termination of the parent-child relationship was in J.A.B.=s best interest and to show three statutory grounds for
termination.  In her fifth issue, Jerri
asserts that family code section 263.405(i) violates her due process rights.








We must first address the
State=s contentions that Jerri has not preserved error because her
complaints were not Aspecifically
presented@ in a timely
filed statement of points as required by section 263.405(i) of the Texas Family
Code.[3]  Although Jerri timely filed a combined motion
for new trial and statement of points on appeal, the State contends that Jerri=s statement of points merely alleged, Ain global and conclusory terms,@ that the evidence is legally and factually insufficient to support
the challenged findings and, therefore, are not Asufficiently specific@ to preserve her legal and factual sufficiency complaints.[4]         

Jerri=s statement of points alleges the following:  

Legal Insufficiency

There is no evidence to support the finding that
Respondent Mother knowingly placed or knowingly allowed [J.A.B.] to remain in
conditions [or] surroundings which endangered the emotional or physical
well-being of [J.A.B.] and that Respondent Mother engaged in conduct or
knowingly placed [J.A.B.] with persons who engaged in conduct which endangered
the physical or emotional well-being of [J.A.B.].

 

There is no evidence to support the finding that
the termination of the parent-child relationship between Respondent Mother and
[J.A.B.] is in the best interest of [J.A.B.]. 


 

There is no
evidence to support the finding that Respondent Mother constructively abandoned
[J.A.B.], that the Department or authorized agency has made reasonable efforts
to return [J.A.B.] to Respondent Mother, that Respondent Mother has not
regularly visited or maintained significant contact with [J.A.B.], or that
Respondent Mother has demonstrated an inability to provide [J.A.B.] with a safe
environment. 

Factual Insufficiency








The evidence was factually insufficient to
support the finding that Respondent Mother knowingly placed or knowingly
allowed [J.A.B.] to remain in conditions [or] surroundings which endangered the
emotional or physical well-being of [J.A.B.] and that Respondent Mother engaged
in conduct or knowingly placed [J.A.B.] with persons who engaged in conduct
which endangered the physical or emotional well-being of [J.A.B.].

 

The evidence was factually insufficient to
support the finding that the termination of the parent-child relationship
between Respondent Mother and [J.A.B.] is in the best interest of [J.A.B.].

 

The evidence was factually insufficient to
support the finding that Respondent Mother constructively abandoned [J.A.B.],
that the Department or authorized agency has made reasonable efforts to return
[J.A.B.] to Respondent Mother, that Respondent Mother has not regularly visited
or maintained significant contact with [J.A.B.], or that Respondent Mother has
demonstrated an inability to provide [J.A.B.] with a safe environment. 

 








We disagree with the State=s contention that the statement of points set forth above merely
claims that a judicial decision is contrary to the evidence and that the
evidence is factually or legally insufficient.[5]  While they are not models of specificity, the
points identify and challenge four of the trial court=s findings and sufficiently inform the trial court of the nature of
the complaints so that it may correct its findings, if appropriate.[6]  We, therefore, hold that the statement of
points is sufficiently specific to preserve Jerri=s legal and factual sufficiency complaints.








Relying on a recent decision
of the Dallas Court of Appeals, In re R.J.S.,[7]
the State argues in a post-submission letter brief that Jerri=s statement of points was not Apresented@ as required
by section 263.405(i) because she did not request a hearing.  In R.J.S., a principal issue before
the court was whether the appellant had waived her points of error by failing
to file a statement of points as required by section 263.405, or whether her
notice of appeal could be viewed as a statement of points.[8]  Without deciding this issue, the court
concluded that Aeven if we
could view [the appellant=s] notice of
appeal as a statement of points, we cannot consider her sufficiency points
because . . . [n]othing in the record shows that the statements of what
appellant desired to appeal, contained in the notice of appeal, were considered
by the trial court@ and A[t]here is no evidence that a hearing was conducted.@[9]  








We decline to follow R.J.S.
because we can find no evidence in section 263.405 that the legislature
intended that a hearing be conducted to present the statement of points, and
the State directs us to none. 
Termination proceedings are civil proceedings.[10]  The rules of civil procedure govern all
actions of a civil nature in Texas courts, unless a specific exception applies.[11]  In civil cases, the mere filing of a timely
motion for new trial preserves legal and factual sufficiency points, and the
movant is not required to request a hearing.[12]  Therefore, Jerri was not required to request
a hearing on her statement of points for the purpose of preserving her
complaints on appeal.  Accordingly, we
will address the merits of Jerri=s sufficiency complaints raised in her statement of points.








In Jerri=s first, second, third, and fourth issues, she argues that the
evidence is legally and factually insufficient to support the trial court=s findings supporting termination. 
In proceedings to terminate the parent‑child relationship, the
State must establish one or more of the grounds listed under section 161.001(1)
of the family code and must also prove that termination is in the best interest
of the child.[13]
 These elements must be
established by clear and convincing evidence, defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@[14]  Although the two elements must
be proven independently, the same evidence may be probative of both issues.[15]  Jerri
first challenges the legal and factual sufficiency of the evidence as to the
statutory grounds for termination.  The
trial court found by clear and convincing evidence that termination of the
parent-child relationship between Jerri and J.A.B. was in J.A.B.=s best interest and that Jerri had:

$      
knowingly placed or knowingly allowed the child
to remain in conditions or surroundings which endanger the physical or
emotional well-being of the child; [and]

 

$                                                                                                      
engaged in conduct or
knowingly placed the child with persons who engaged in conduct which endangers
the physical or emotional well-being of the child.[16]     

We may affirm the decision of
the trial court if we find the evidence legally and factually sufficient to
support any statutory ground relied on by the trial court and that termination
is in the best interest of the child.[17]


The evidence
in this case shows as follows:








Jerri tested
positive for methamphetamine five times during her pregnancy with J.A.B.[18]  At trial, Jerri admitted that she used drugs Athe first two or three months [she] was pregnant@ and that she took two or three of the earliest positive tests,
although she disputed the others.  The
last positive test offered by the State was taken September 9, 2005, less than
two months before J.A.B. was born on November 2, 2005.    

J.A.B.
remained in the hospital for eight days after her birth.  Although neither Jerri nor J.A.B. tested
positive for methamphetamine at the time of J.A.B.=s birth, the baby=s foster mother testified that J.A.B.=s eight-day hospitalization was necessary Ato get her stable because of the drugs.@  Jerri denied the
hospitalization was because of her drug use during pregnancy.  

J.A.B. went
home from the hospital with the foster family and has remained in their care
ever since, although Jerri has visited her an average of three times per
month.  J.A.B. has had several medical
problems, including a problem with muscle stiffness for which she requires
daily physical therapy, sensory issues, aggressive behavior, and sleeping
problems.  J.A.B.=s foster mother understood that some of these problems were
drug-related and that additional problems might develop in the future due to
the drug exposure.   








        Jerri
participated in some of the services offered by the State, both before and
after J.A.B.=s birth.[19]  She attended six out of twenty-eight
psychotherapy sessions.  She also went to
parenting classes and attended three or four abuse counseling sessions. 








Much of the
evidence at trial went to Jerri=s drug problem.  In the past few
years, she entered two different drug rehabilitation programs but did not
complete either one.[20]  Jerri also consistently failed to take drug
tests as requested by the State up to the time of trial.  The State offered to provide Jerri with
transportation (although she denies this) and warned her that it would presume
that failure to take a drug test would mean the test would be Adirty.@  Between J.A.B.=s birth in November 2005 and March 2006, Jerri failed to show up for
weekly drug testing Aat least 80
percent of the time,@ and between
March 2006 and the time of trial in October 2006, Jerri refused the four drug
tests she was asked to take.  Further,
Jerri never completed a drug assessment that was arranged on several occasions
by the State, although transportation was again offered.  She also missed several appointments for a
psychological evaluation. 

Jerri
testified that she was employed full time and had been for the four or five
months before the trial.  She did not,
however, know the last name of her employer, stated she got paid in cash, and
had not provided the State with proof of her employment.  A CASA representative stated that Jerri did
not have a home or a job, and one of Jerri=s caseworkers testified that throughout the time she worked with
Jerri, Jerri stayed with family, friends, or at a motel but did not have her
own home.  At the time of trial, Jerri
was living in a house owned by the mother of J.A.B.=s alleged father but was not paying any rent. 








Jerri had
six children besides J.A.B.  None of
these children lived with her at the time of the trial, although there was no
evidence that her parental rights to any of them had been formally terminated.  Three of these children, G., M., and E.,
tested positive for drugs at birth.  The
State removed G. from Jerri=s care at his birth and removed M. after Jerri evaded the State with
the child for over a year, including incidents where Jerri fled from the police
with M. and lied to the court about M.=s wherabouts.   When M. was
eventually found in April 2005 in the care of M.=s father, she was in Adeplorable@ condition:
she was extremely dirty and soiled, starving, and her hair was full of
lice.  G. and M. are now in the joint
custody of their father and paternal grandparents.  Two other children, J. and B., who are older
than G. and M., live with their father, in part because of Jerri=s drug problems.  Jerri
testified this arrangement was set up with her permission, even though the
father had been convicted of assault on a family member.[21]    

J.A.B.=s foster mother testified that she and her husband want to adopt
J.A.B.  The foster parents have four
grown children and a large extended family and support network.  Both the husband and wife participate in
J.A.B.=s daily physical therapy.  The
State=s caseworkers confirmed that the foster family provided a Avery positive@ home and
that the State desired for this family to adopt J.A.B. if termination was
rendered. 

Jerri=s initial plan for J.A.B. was to bring her home, work with the State=s services, and do everything she needed to do to have J.A.B.
returned.  Later, despite not having done
much of her drug testing or assessments, she told her caseworker that she was Anot worried@ about
completing her services in time.  At
trial, Jerri testified that she wanted J.A.B. back and believed she was capable
of raising her.  








We first
consider whether the evidence is legally and factually sufficient to support
the trial court=s finding on
ground (E), that Jerri Aengaged in
conduct or knowingly placed the child with persons who engaged in conduct which
endangers the physical or emotional well-being of the child.@[22]  

Jerri argues
that her condition is Anot
sufficiently detrimental@ to warrant
termination under section (E) in view of other Texas cases involving
termination because of drug use.  In
light of the evidence in this case, however, we disagree.








Drug abuse
during pregnancy constitutes conduct that endangers a child=s physical and emotional well-being.[23]  Continued drug use after a child is removed
also amounts to child endangerment.[24]  Jerri tested positive for methamphetamine
five times throughout her pregnancy with J.A.B. and, at trial, admitted using
drugs during the pregnancy.  Further,
Jerri=s chronic refusal to undergo drug testing after J.A.B.=s birth was evidence that she continued to use illegal drugs.[25]  Although there is some evidence that J.A.B.=s medical problems are drug-related, it is not necessary that a child
actually suffer injury for a parent to Aendanger@ the child,
and endangerment can be inferred from parental misconduct alone.[26]  Thus, we conclude that Jerri=s drug use during and after her pregnancy with J.A.B. endangered
J.A.B.








Further,
drug addiction and its effect on a parent=s life and ability to parent may establish an endangering course of
conduct.[27]  The trial court could have considered the
manner in which Jerri treated other children in the family when deciding
whether she engaged in a course of conduct that endangered the physical or
emotional well-being of J.A.B.[28]  It could also look to what Jerri did both
before and after J.A.B.=s birth.[29]  Three of Jerri=s older children tested positive for drugs at birth, and none of her
other children are in her care due at least in part to her past drug use.[30]  Jerri=s past drug use, therefore, coupled with evidence of her more recent
drug use indicates an endangering course of conduct.

A parent=s failure to establish stable employment and housing may also endanger
a child.[31]  Although Jerri testified that she had a job,
the fact-finder would have been entitled to disbelieve her testimony based on
the caseworkers= testimony
or to conclude that her employment was not stable and that she did not have a
home of her own.








Having
carefully considered the evidence and applying the appropriate standards of
review,[32]
we hold that the trial court could have reasonably formed a firm belief or
conviction that Jerri engaged in conduct that endangered the physical or
emotional well-being of J.A.B., and the evidence was legally and factually sufficient
to support the court=s finding
under family code section 161.001(1)(E). 
Accordingly, we overrule Jerri=s third issue.  Because we find
the evidence was sufficient to support a finding under section (E), we need not
address Jerri=s second
issue challenging the sufficiency of the evidence under section (D).[33]

Jerri
further contends, in her first issue, that the evidence was legally and
factually insufficient to support the trial court=s finding that termination of the parent-child relationship between
Jerri and J.A.B. was in J.A.B.=s best interest.  Nonexclusive
factors that the trier of fact in a termination case may use in determining the
best interest of the child include:

(1)    the desires of the child;

 

(2)    the emotional and physical needs of the child now and in the
future; 

 

(3)    the emotional and physical danger to the child now and in the
future; 

 

(4)    the parental abilities of the individuals seeking custody; 

 

(5)    the programs available to assist these individuals to promote the
best interest of the child;

 

(6)    the plans for the child by these individuals or by the agency
seeking custody;

 

(7)    the stability of the home or proposed
placement;

 

(8)    the acts or omissions of the parent which may indicate that the
existing parent‑child relationship is not a proper one; and

 








(9)    any excuse for the acts or omissions of the parent.[34]


 

These factors are not
exhaustive; some listed factors may be inapplicable to some cases; other
factors not on the list may also be considered when appropriate.[35]   Furthermore, undisputed evidence of just one
factor may be sufficient in a particular case to support a finding that
termination is in the best interest of the child.[36]  On the other hand, the presence of scant
evidence relevant to each Holley factor will not support such a finding.[37]


J.A.B.=s emotional and physical needs, the emotional and physical danger to
J.A.B., and Jerri=s acts or
omissions support a finding that termination of the parent-child relationship
was in J.A.B.=s best
interest.  J.A.B. requires daily physical
therapy, and her foster mother anticipated additional medical problems in the
future.  Therefore, J.A.B.=s physical needs are great. 
Further, as discussed above, Jerri=s repeated drug use, particularly evidenced by the positive drug tests
throughout her pregnancy and refusal to submit to numerous drug tests after J.A.B.
was born, endangered J.A.B. and indicate that the parent-child relationship was
not a proper one.








Three more
factorsCparental abilities, plans for the child, and stability of the home or
proposed placementCalso favor a
conclusion that termination of the parent-child relationship was in J.A.B.=s best interest.  The evidence
showed that Jerri was a poor parent to J.A.B. and to her six other children, at
least in part because of a long-term drug problem.  The trial court could have inferred from
Jerri=s past conduct endangering the well-being of J.A.B. that similar
conduct would recur if J.A.B. was returned to her.[38]  Evidence of a parent=s long-term drug use and unstable lifestyle can also support a
fact-finder=s conclusion
that termination is in the child=s best interest.[39]  The trial court could have concluded that
Jerri would not provide a stable home because of her drug use and the
caseworker=s testimony
that she did not have a steady home or job. 
It could also have found that the State=s plans for J.A.B., adoption by the foster family that had cared for
her since birth, were preferable to Jerri=s plans.[40]









Several
programs had been available to Jerri both before and after J.A.B.=s birth.  Due to Jerri=s chronic refusal to take drug tests, however, the trial court was
entitled to conclude she still had a problem with drugs despite two attempts at
rehabilitation and several counseling sessions. 
A parent=s drug use
and failure to comply with her family service plan support a finding that
termination is in the best interest of the child.[41]


Jerri argues
that she lacked transportation to get to some of the appointments she
missed.  The trial court, however, could
have believed the testimony of Jerri=s two caseworkers that they offered her transportation.  Further, Jerri argues that she is not
as bad as some parents who have had their parental rights terminated for drug
use.  While this may be true, it does not
excuse Jerri=s acts and
omissions as detailed above.[42]

Having
carefully considered the evidence in light of the Holley factors and
applying the appropriate standards of review,[43]
we hold that the trial court could have reasonably formed a firm belief or
conviction that termination was in the best interest of J.A.B.  Accordingly, we overrule Jerri=s first issue. 








        Having overruled Jerri=s first and third issues, which are dispositive of the appeal, we
affirm the trial court=s judgment.

 

PER
CURIAM

 

PANEL F:  CAYCE, C.J.; GARDNER
and WALKER, JJ.

DELIVERED:  October 18, 2007                            

 

 











[1]See Tex. R. App. P. 47.4.





[2]The
trial court also terminated the parental rights of J.A.B.=s
alleged father, and he has not appealed. 





[3]Tex. Fam. Code Ann. '
263.405(i) (Vernon 2002 & Supp. 2006).





[4]See
id.





[5]See
id.





[6]See
In re A.J.H., 205 S.W.3d 79, 80 (Tex. App.CFort
Worth 2006, no pet.); In re J.E.D., No. 02-06-00307-CV, 2007 WL 704900,
at *1 (Tex. App.CFort
Worth Mar. 8, 2007, no pet.) (mem. op.); House
Comm. on Juvenile Justice and Family Issues, Bill Analysis, Tex. H.B.
409, 79th Leg., R.S. (2005) (providing that if a party points out a mistake
warranting a new trial, the trial court can immediately order a new trial,
accomplishing the legislative policy of decreasing post-judgment delay in
termination cases).  Because we hold that
Jerri=s
statement of points is specific enough to comply with section 263.405(i), we
need not reach her fifth issue where she complains that the specificity
requirement violates her rights to due process, open courts, and equal
protection. Tex. R. App. P. 47.1;
see Barshop v. Medina County Underground Water Conservation Dist., 925
S.W.2d 618, 626 (Tex. 1996) (noting that to have standing to challenge a
statute, a plaintiff must first suffer some actual or threatened injury under
the statute).





[7]219
S.W.3d 623, 626B27
(Tex. App.CDallas
2007, pet. denied).





[8]Id. at
625B26.





[9]Id. at
626B27.  Thus, the discussion regarding whether the
appellant properly Apresented@ a
statement of points was dicta. 





[10]See, e.g.,
In re R.V., 977 S.W.2d 777, 781 (Tex. App.CFort
Worth 1998, no pet.); see also In re B.L.D., 113 S.W.3d 340, 351 (Tex.
2003) (noting that the rules of evidence applicable to civil cases and rules of
civil procedure govern termination proceedings), cert. denied, 541 U.S.
945 (2004). 





[11]Tex. R. Civ. P. 2; see also Tex. Fam. Code Ann. '
105.003(a) (Vernon 2002) (AExcept as otherwise provided
by this title, proceedings shall be as in civil cases generally.@). 





[12]Cecil
v. Smith, 804 S.W.2d 509, 510B12
(Tex. 1991) (holding that legal and factual sufficiency points were preserved
by appellant=s
timely filing of a motion for new trial, even though she did not Apresent@ the
motion to the trial court).  A Apresentment@
requirement was expressly eliminated from Rule 329b of the rules of civil
procedure in 1981.  See Tex. R. Civ. P. 329b; Cecil,
804 S.W.2d at 512; Charles W. Barrow, Appellate Procedure Reform, 12 St. Mary=s L.J. 615, 619 & n.14
(1981).  The court in R.J.S.
relied on a criminal case dealing with the requirements for presenting a motion
for new trial.  R.J.S., 219
S.W.3d at 626 (citing Rozell v. State, 176 S.W.3d 228, 230B31
(Tex. Crim. App. 2005) (holding that a criminal defendant must Apresent@ a
motion for new trial to the trial court, and indicating that presentment
requires giving the trial court Aactual notice@ of
the desire to have a hearing)).





[13]Tex. Fam. Code Ann. '
161.001 (Vernon 2002 & Supp. 2006); In re J.L., 163 S.W.3d 79, 84
(Tex. 2005).





[14]Tex. Fam. Code Ann. ''
101.007, 161.001, 161.206(a) (Vernon 2002 & Supp. 2006); In re J.F.C.,
96 S.W.3d 256, 263 (Tex. 2002).    





[15]In re
C.H., 89 S.W.3d 17, 28 (Tex. 2002).





[16]See Tex. Fam. Code Ann. '
161.001(1)(D), (E). 





[17]In re
N.R., 101 S.W.3d 771, 775 (Tex. App.CTexarkana 2003, no
pet.).  Although Jerri challenges the
evidence to support termination based on family code sections 161.001(1)(D),
(E), and (N), the trial court=s judgment does not refer to
ground (N) (constructive abandonment), and the State does not attempt to
support termination based on that ground. 
We, therefore, need not address Jerri=s fourth issue in which she
challenges the sufficiency of the evidence to show constructive abandonment.





[18]The
dates of these positive tests were September 9, 2005; June 1, 2005; May 4,
2005; April 20, 2005; and April 15, 2005. 





[19]Some
of these services were offered pursuant to the State=s
involvement with two of Jerri=s other children, G. and M. 





[20]In
one, she was only one-half of a day short of completing the twenty-one-day
program but left early because she was Amad@ and
had a scheduled visit with her other children. 





[21]Jerri=s
oldest child is nineteen and lives in Killeen with a family member.  A final child, E., died of SIDS.





[22]Tex. Fam. Code Ann. '
161.001(1)(E). 





[23]In re
E.A.W.S., No. 02-06-00031-CV, 2006 WL 3525367, at *9
(Tex. App.CFort
Worth Dec. 7, 2006, pet. denied) (mem. op.); Dupree v. Tex. Dep=t of
Protective & Regulatory Servs., 907 S.W.2d 81, 84 (Tex.
App.CDallas
1995, no writ).





[24]Cervantes-Peterson
v. Tex. Dep=t of
Family & Protective Servs., 221 S.W.3d 244, 253B54
(Tex. App.CHouston
[1st Dist.] 2006, no pet.).





[25]In re
D.S., No. 11-06-00157-CV, 2007 WL 178229, at *7 (Tex. App.CEastland
Jan. 25, 2007, no pet.) (mem. op.) (a parent=s illegal drug activity after
agreeing not to do drugs in a service plan to regain her children is sufficient
to establish clear and convincing proof of voluntary, deliberate, and conscious
conduct that endangered the well-being of her children).





[26]In re
M.C., 917 S.W.2d 268, 269 (Tex. 1996); Tex. Dep=t of
Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). 





[27]In re
U.P., 105 S.W.3d 222, 234 (Tex. App.CHouston [14th Dist.] 2003,
pet. denied).





[28]See
In re M.L.M., No. 07-06-00226-CV, 2007 WL 79339, at *4 (Tex.
App.CAmarillo
Jan. 12, 2007, no pet.) (mem. op.). 





[29]In re
D.M., 58 S.W.3d 801, 812 (Tex. App.CFort Worth 2001, no pet.). 





[30]See
M.L.M., 2007 WL 79339, at *4 (sufficient evidence where, among others
factors, drug use had caused loss of possession of other children).





[31]In re
R.M., No. 14-02-00221-CV, 2003 WL 253291, at *4 (Tex. App.CHouston
[14th Dist.] Feb. 6, 2003, no pet.) (mem. op.). 






[32]See
J.F.C., 96 S.W.3d at 265B66; C.H., 89 S.W.3d at
25.





[33]See
N.R., 101 S.W.3d at 775 (holding that only one statutory ground is required
to terminate parental rights under section 161.001).





[34]Holley
v. Adams, 544 S.W.2d 367, 371B72
(Tex. 1976).  





[35]C.H., 89
S.W.3d at 27.





[36]Id.  





[37]Id. 





[38]In re
J.D.B., No. 02-06-00451-CV, 2007 WL 2216612, at *3 (Tex. App.CFort
Worth Aug. 2, 2007, no pet.) (mem. op.); In re C.S.C., No.
02-06-00254-CV, 2006 WL 3438185, at *7 (Tex. App.CFort
Worth Nov. 30, 2006, no pet.) (mem. op.).





[39]In re
D.S., 176 S.W.3d 873, 879 (Tex. App.CFort Worth 2005, no pet.), superseded
by statute on other grounds as recognized by In re D.A.R., 201 S.W.3d 229,
230 (Tex. App.CFort
Worth 2006, no pet.).





[40]Evidence
about placement plans and adoption are relevant to best interest.  See, e.g., C.H., 89 S.W.3d
at 28.





[41]In re
S.B., 207 S.W.3d 877, 887B88 (Tex. App.CFort
Worth 2006, no pet.).





[42]There
is no evidence of J.A.B.=s
desires since she was younger than one year old at the time of trial.





[43]See
J.F.C., 96 S.W.3d at 265B66; C.H., 89 S.W.3d at
25.