COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-404-CV

IN THE INTEREST OF J.A.B., 

A CHILD

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Jerri B. appeals the trial court’s order terminating her parental rights to her daughter J.A.B.  We affirm. 

In early 2005, the Department of Family and Protective Services (the State) removed one of Jerri’s older children from her care and learned that Jerri was pregnant with J.A.B.  Throughout the pregnancy, Jerri tested positive for methamphetamine five times, and the last test occurred two months before J.A.B. was born.  Although neither J.A.B. nor Jerri tested positive for drugs at J.A.B.’s birth, J.A.B. went home with her foster family after an eight-day hospitalization.  After J.A.B.’s removal, Jerri refused to submit to the majority of the State’s drug tests and only participated in a few of the offered services.  The trial court terminated Jerri’s parental rights to J.A.B. on October 2, 2006.
(footnote: 2)  
 
In five issues, Jerri contends that the trial court improperly rendered the order of termination.  In her first four issues, Jerri challenges the legal and factual sufficiency of the evidence to support the trial court’s finding that termination of the parent-child relationship 
was in J.A.B.’s best interest and to show three statutory grounds for termination.  In her fifth issue, Jerri asserts that family code section 263.405(i) violates her due process rights.

We must first address the State’s contentions that Jerri has not preserved error because her complaints were not “specifically presented” in a timely filed statement of points as required by section 263.405(i) of the Texas Family Code.
(footnote: 3)  Although Jerri timely filed a combined motion for new trial and statement of points on appeal, the State contends that Jerri’s statement of points merely alleged, “in global and conclusory terms,” that the evidence is legally and factually insufficient to support the challenged findings and, therefore, are not “sufficiently specific” to preserve her legal and factual sufficiency complaints.
(footnote: 4)   

Jerri’s statement of points alleges the following:  

Legal Insufficiency

There is no evidence to support the finding that Respondent Mother knowingly placed or knowingly allowed [J.A.B.] to remain in conditions [or] surroundings which endangered the emotional or physical well-being of [J.A.B.] and that Respondent Mother engaged in conduct or knowingly placed [J.A.B.] with persons who engaged in conduct which endangered the physical or emotional well-being of [J.A.B.].

There is no evidence to support the finding that the termination of the parent-child relationship between Respondent Mother and [J.A.B.] is in the best interest of [J.A.B.].  

There is no evidence to support the finding that Respondent Mother constructively abandoned [J.A.B.], that the Department or authorized agency has made reasonable efforts to return [J.A.B.] to Respondent Mother, that Respondent Mother has not regularly visited or maintained significant contact with [J.A.B.], or that Respondent Mother has demonstrated an inability to provide [J.A.B.] with a safe environment. 

Factual Insufficiency

The evidence was factually insufficient to support the finding that Respondent Mother knowingly placed or knowingly allowed [J.A.B.] to remain in conditions [or] surroundings which endangered the emotional or physical well-being of [J.A.B.] and that Respondent Mother engaged in conduct or knowingly placed [J.A.B.] with persons who engaged in conduct which endangered the physical or emotional well-being of [J.A.B.].

The evidence was factually insufficient to support the finding that the termination of the parent-child relationship between Respondent Mother and [J.A.B.] is in the best interest of [J.A.B.].

The evidence was factually insufficient to support the finding that Respondent Mother constructively abandoned [J.A.B.], that the Department or authorized agency has made reasonable efforts to return [J.A.B.] to Respondent Mother, that Respondent Mother has not regularly visited or maintained significant contact with [J.A.B.], or that Respondent Mother has demonstrated an inability to provide [J.A.B.] with a safe environment. 

We disagree with the State’s contention that the statement of points set forth above merely claims that a judicial decision is contrary to the evidence and that the evidence is factually or legally insufficient.
(footnote: 5)  While they are not models of specificity, the points identify and challenge four of the trial court’s findings and sufficiently inform the trial court of the nature of the complaints so that it may correct its findings, if appropriate.
(footnote: 6)  We, therefore, hold that the statement of points is sufficiently specific to preserve Jerri’s legal and factual sufficiency complaints.

Relying on a recent decision of the Dallas Court of Appeals, 
In re R.J.S.
,
(footnote: 7) the State argues in a post-submission letter brief that Jerri’s statement of points was not “presented” as required by section 263.405(i) because she did not request a hearing.  
In 
R.J.S.
, a principal issue before the court was whether the appellant had waived her points of error by failing to file a statement of points as required by section 263.405, or whether her notice of appeal could be viewed as a statement of points.
(footnote: 8)  Without deciding this issue, the court concluded that “even if we could view [the appellant’s] notice of appeal as a statement of points, we cannot consider her sufficiency points because . . . [n]othing in the record shows that the statements of what appellant desired to appeal, contained in the notice of appeal, were considered by the trial court” and “[t]here is no evidence that a hearing was conducted.”
(footnote: 9)  

We decline to follow 
R.J.S.
 because we can find no evidence in section 263.405 that the legislature intended that a hearing be conducted to present the statement of points, and the State directs us to none.  Termination proceedings are civil proceedings.
(footnote: 10)  The rules of civil procedure govern all actions of a civil nature in Texas courts, unless a specific exception applies.
(footnote: 11)  In civil cases, the mere filing of a timely motion for new trial preserves legal and factual sufficiency points, and the movant is not required to request a hearing.
(footnote: 12)  Therefore, Jerri was not required to request a hearing on her statement of points for the purpose of preserving her complaints on appeal.  Accordingly, 
we will address the merits of Jerri’s sufficiency complaints raised in her statement of points.

In Jerri’s first, second, third, and fourth issues, she argues that the evidence is legally and factually insufficient to support the trial court’s findings supporting termination.  
In proceedings to terminate the parent-child relationship, the State must establish one or more of the grounds listed under section 161.001(1) of the family code and must also prove that termination is in the best interest of the child.
(footnote: 13) 
 
These elements must be established by clear and convincing evidence, defined as the
 “measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.”
(footnote: 14)  Although the two elements must be proven independently
, the same evidence may be probative of both issues.
(footnote: 15) 
 
Jerri first challenges the legal and factual sufficiency of the evidence as to the statutory grounds for termination.
  The trial court found by clear and convincing evidence that termination of the parent-child relationship between Jerri and J.A.B. was in J.A.B.’s best interest and that Jerri had:

knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; [and]

engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.
(footnote: 16)    

We may affirm the decision of the trial court if we find the evidence legally and factually sufficient to support any statutory ground relied on by the trial court and that termination is in the best interest of the child.
(footnote: 17) 

The evidence in this case shows as follows:

Jerri tested positive for methamphetamine five times during her pregnancy with J.A.B.
(footnote: 18)  At trial, Jerri admitted that she used drugs “the first two or three months [she] was pregnant” and that she took two or three of the earliest positive tests, although she disputed the others.  The last positive test offered by the State was taken September 9, 2005, less than two months before J.A.B. was born on November 2, 2005.    

J.A.B. remained in the hospital for eight days after her birth.  Although neither Jerri nor J.A.B. tested positive for methamphetamine at the time of J.A.B.’s birth, the baby’s foster mother testified that J.A.B.’s eight-day hospitalization was necessary “to get her stable because of the drugs.”  Jerri denied the hospitalization was because of her drug use during pregnancy.  

J.A.B. went home from the hospital with the foster family and has remained in their care ever since, although Jerri has visited her an average of three times per month.  
J.A.B. has had several medical problems, including a problem with muscle stiffness for which she requires daily physical therapy, sensory issues, aggressive behavior, and sleeping problems.  J.A.B.’s foster mother understood that some of these problems were drug-related and that additional problems might develop in the future due to the drug exposure.   

     Jerri participated in some of the services offered by the State, both before and after J.A.B.’s birth.
(footnote: 19)  She attended six out of twenty-eight psychotherapy sessions.  She also went to parenting classes and attended three or four abuse counseling sessions. 

Much of the evidence at trial went to Jerri’s drug problem.  In the past few years, she entered two different drug rehabilitation programs but did not complete either one.
(footnote: 20)  
Jerri also consistently failed to take drug tests as requested by the State up to the time of trial.  The State offered to provide Jerri with transportation (although she denies this) and warned her that it would presume that failure to take a drug test would mean the test would be “dirty.”  Between J.A.B.’s birth in November 2005 and March 2006, Jerri failed to show up for weekly drug testing “at least 80 percent of the time,” and
 between March 2006 and the time of trial in October 2006, Jerri refused the four drug tests she was asked to take.  Further, Jerri never completed a drug assessment that was arranged on several occasions by the State, although transportation was again offered.  She also missed several appointments for a psychological evaluation. 

Jerri testified that she was employed full time and had been for the four or five months before the trial.  She did not, however, know the last name of her employer, stated she got paid in cash, and had not provided the State with proof of her employment.  A CASA representative stated that Jerri did not have a home or a job, and one of Jerri’s caseworkers testified that throughout the time she worked with Jerri, Jerri stayed with family, friends, or at a motel but did not have her own home.  At the time of trial, Jerri was living in a house owned by the mother of J.A.B.’s alleged father but was not paying any rent. 

Jerri had six children besides J.A.B.  None of these children lived with her at the time of the trial, although there was no evidence that her parental rights to any of them had been formally terminated.  Three of these children, G., M., and E., tested positive for drugs at birth.  The State removed G. from Jerri’s care at his birth and removed M. after Jerri evaded the State with the child for over a year, including incidents where Jerri fled from the police with M. and lied to the court about M.’s wherabouts.  
 When M. was eventually found in April 2005 in the care of M.’s father, she was in “deplorable” condition: she was extremely dirty and soiled, starving, and her hair was full of lice.  
G. and M. are now in the joint custody of their father and paternal grandparents.  
Two other children, J. and B., who are older than G. and M., live with their father, in part because of Jerri’s drug problems.  Jerri testified this arrangement was set up with her permission, even though the father had been convicted of assault on a family member.
(footnote: 21)    

J.A.B.’s foster mother testified that she and her husband want to adopt J.A.B.  The foster parents have four grown children and a large extended family and support network.  Both the husband and wife participate in J.A.B.’s daily physical therapy.  The State’s caseworkers confirmed that the foster family provided a “very positive” home and that the State desired for this family to adopt J.A.B. if termination was rendered. 

Jerri’s initial plan for J.A.B. was to bring her home, work with the State’s services, and do everything she needed to do to have J.A.B. returned.  Later, despite not having done much of her drug testing or assessments, she told her caseworker that she was “not worried” about completing her services in time.  At trial, Jerri testified that she wanted J.A.B. back and believed she was capable of raising her.  

We first consider whether the evidence is legally and factually sufficient to support the trial court’s finding on ground (E), that Jerri “engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.”
(footnote: 22)  

Jerri argues that her condition is “not sufficiently detrimental” to warrant termination under section (E) in view of other Texas cases involving termination because of drug use.  In light of the evidence in this case, however, we disagree.

Drug abuse during pregnancy constitutes conduct that endangers a child’s physical and emotional well-being.
(footnote: 23)  Continued drug use after a child is removed also amounts to child endangerment.
(footnote: 24)  Jerri tested positive for methamphetamine five times throughout her pregnancy with J.A.B. and, at trial, admitted using drugs during the pregnancy.  Further, Jerri’s chronic refusal to undergo drug testing after J.A.B.’s birth was evidence that she continued to use illegal drugs.
(footnote: 25)  Although there is some evidence that J.A.B.’s medical problems are drug-related, it is not necessary that a child actually suffer injury for a parent to “endanger” the child, and endangerment can be inferred from parental misconduct alone.
(footnote: 26)  Thus, we conclude that Jerri’s drug use during and after her pregnancy with J.A.B. endangered J.A.B.

Further, drug addiction and its effect on a parent’s life and ability to parent may establish an endangering course of conduct.
(footnote: 27)  The trial court could have considered the manner in which Jerri treated other children in the family when deciding whether she engaged in a course of conduct that endangered the physical or emotional well-being of J.A.B.
(footnote: 28)  It could also look to what Jerri did both before and after J.A.B.’s birth.
(footnote: 29)  Three of Jerri’s older children tested positive for drugs at birth, and none of her other children are in her care due at least in part to her past drug use.
(footnote: 30)  Jerri’s past drug use, therefore, coupled with evidence of her more recent drug use indicates an endangering course of conduct.

A parent’s failure to establish stable employment and housing may also endanger a child.
(footnote: 31)  Although Jerri testified that she had a job, the fact-finder would have been entitled to disbelieve her testimony based on the caseworkers’ testimony or to conclude that her employment was not stable and that she did not have a home of her own.

Having carefully considered the evidence and applying the appropriate standards of review,
(footnote: 32) we hold that the trial court could have reasonably formed a firm belief or conviction that Jerri engaged in conduct 
that endangered the physical or emotional well-being of J.A.B., and 
the evidence was legally and factually sufficient to support the court’s finding under family code section 161.001(1)(E).  Accordingly, we overrule Jerri’s third issue.  Because we find the evidence was sufficient to support a finding under section (E), we need not address Jerri’s second issue challenging the sufficiency of the evidence under section (D).
(footnote: 33)
 Jerri further contends, in her first issue, that the evidence was legally and factually insufficient to support the trial court’s finding that termination of the parent-child relationship between Jerri and J.A.B. was in J.A.B.’s best interest.  Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future; 

(3) the emotional and physical danger to the child now and in the future; 

(4) the parental abilities of the individuals seeking custody; 

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody;

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9) any excuse for the acts or omissions of the parent.
(footnote: 34) 

These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.
(footnote: 35) 
  Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child.
(footnote: 36)  
On the other hand, the presence of scant evidence relevant to each 
Holley
 factor will not support such a finding.
(footnote: 37) 

J.A.B.’s emotional and physical needs, the emotional and physical danger to J.A.B., and Jerri’s acts or omissions support a finding that termination of the parent-child relationship was in J.A.B.’s best interest.  J.A.B. requires daily physical therapy, and her foster mother anticipated additional medical problems in the future.  Therefore, J.A.B.’s physical needs are great.  Further, as discussed above, Jerri’s
 repeated drug use, particularly evidenced by the positive drug tests throughout her pregnancy and refusal to submit to numerous drug tests after J.A.B. was born, endangered J.A.B. and indicate that the parent-child relationship was not a proper one.

Three more factors—parental abilities, plans for the child, and stability of the home or proposed placement—also favor a conclusion that termination of the parent-child relationship was in J.A.B.’s best interest. 
 The evidence showed that Jerri was a poor parent to J.A.B. and to her six other children, at least in part because of a long-term drug problem.  
The trial court could have inferred from Jerri’s past conduct endangering the well-being of J.A.B. that similar conduct would recur if J.A.B. was returned to her.
(footnote: 38)  
Evidence of a parent’s long-term drug use and unstable lifestyle can also support a fact-finder’s conclusion that termination is in the child’s
 
best interest.
(footnote: 39)  
The trial court could have concluded that Jerri would not provide a stable home because of her drug use and the caseworker’s testimony that she did not have a steady home or job.  It could also have found that the State’s plans for J.A.B., adoption by the foster family that had cared for her since birth, were preferable to Jerri’s plans
.
(footnote: 40) 

Several programs had been available to Jerri both before and after J.A.B.’s birth.  
Due to Jerri’s chronic refusal to take drug tests, however, the trial court was entitled to conclude she still had a problem with drugs despite two attempts at rehabilitation and several counseling sessions.  
A parent’s drug use and failure to comply with her family service plan support a finding that termination is in the best interest of the child.
(footnote: 41) 

Jerri argues that she lacked transportation to get to some of the appointments she missed.  The trial court, however, could have believed the testimony of Jerri’s two caseworkers that they offered her transportation.  Further,
 
Jerri argues that she is not as bad as some parents who have had their parental rights terminated for drug use.  While this may be true, it does not
 excuse Jerri’s acts and omissions as detailed above.
(footnote: 42)
 Having carefully considered the evidence in light of
 the 
Holley
 factors
 and applying the appropriate standards of review,
(footnote: 43) we hold that the trial court could have reasonably formed a firm belief or conviction that termination was in the best interest of J.A.B.  
Accordingly, we overrule Jerri’s first issue. 

 
 
Having overruled Jerri’s first and third issues, which are dispositive of the appeal, we affirm the trial court’s judgment.

PER CURIAM

PANEL F:  CAYCE, C.J.; GARDNER and WALKER, JJ.

DELIVERED:  October 18, 2007 
 

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
The trial court also terminated the parental rights of J.A.B.’s alleged father, and he has not appealed. 

3:
Tex. Fam. Code Ann.
 § 263.405(i) (Vernon 2002 & Supp. 2006).

4:
See id.

5:
See id
.

6:
See In re A.J.H.
, 205 S.W.3d 79, 80 (Tex. App.—Fort Worth 2006, no pet.); 
In re J.E.D.
, No. 02-06-00307-CV, 2007 WL 704900, at *1 (Tex. App.—Fort Worth Mar. 8, 2007, no pet.) (mem. op.); 
House Comm. on Juvenile Justice and Family Issues, Bill Analysis
, Tex. H.B. 409, 79th Leg., R.S. (2005) (providing that if a party points out a mistake warranting a new trial, the trial court can immediately order a new trial, accomplishing the legislative policy of decreasing post-judgment delay in termination cases).  Because we hold that Jerri’s statement of points is specific enough to comply with section 263.405(i), we need not reach her fifth issue where she complains that the specificity requirement violates her rights to due process, open courts, and equal protection. 
Tex. R. App. P.
 47.1;
 see
 Barshop v. Medina County Underground Water Conservation Dist.
, 925 S.W.2d 618, 626 (Tex. 1996) (noting that to have standing to challenge a statute, a plaintiff must first suffer some actual or threatened injury under the statute).

7:
219 S.W.3d 623, 626–27 (Tex. App.—Dallas 2007, pet. denied).

8:
Id.
 at 625–26.

9:
Id.
 at 626–27.  Thus, the discussion regarding whether the appellant properly “presented” a statement of points was dicta. 

10:
See
, 
e.g.
,
 In re R.V.
, 977 S.W.2d 777, 781 (Tex. App.—Fort Worth 1998, no pet.); 
see also In re B.L.D.
, 113 S.W.3d 340, 351 (Tex. 2003) (noting that the rules of evidence applicable to civil cases and rules of civil procedure govern termination proceedings), 
cert. denied
, 541 U.S. 945 (2004). 

11:
Tex. R. Civ. P.
 2; 
see also
 
Tex. Fam. Code Ann.
 § 105.003(a) (Vernon 2002) (“Except as otherwise provided by this title, proceedings shall be as in civil cases generally.”).
 

12:
Cecil v. Smith
, 804 S.W.2d 509, 510–12 (Tex. 1991)
 (holding that legal and factual sufficiency points were preserved by appellant’s timely filing of a motion for new trial, even though she did not “present” the motion to the trial court).  A “presentment” requirement was expressly eliminated from Rule 329b of the rules of civil procedure in 1981.  
See
 Tex. R. Civ. P.
 329b;
 Cecil
, 804 S.W.2d at 512
; Charles W. Barrow, 
Appellate Procedure Reform
, 12 
St. Mary’s L.J. 
615, 619 & n.14 (1981).  The court in
 R.J.S.
 relied on a criminal case dealing with the requirements for presenting a motion for new trial.
  R.J.S.
,
 
219 S.W.3d
 
at 626 (citing 
Rozell v. State
, 176 S.W.3d 228, 230–31 (Tex. Crim. App. 2005) (holding that a criminal defendant must “present” a motion for new trial to the trial court, and indicating that presentment requires giving the trial court “actual notice” of the desire to have a hearing
)).

13:
Tex. Fam. Code Ann.
 § 161.001
 (Vernon 2002 & Supp. 2006); 
In re J.L.
, 163 S.W.3d 79, 84 (Tex. 2005).

14:
Tex. Fam. Code Ann.
 §§ 101.007, 161.001, 161.206(a) (Vernon 2002 & Supp. 2006); 
In re J.F.C.
, 96 S.W.3d 256, 263 (Tex. 2002)
. 
 
 
 

15:
In re C.H.
, 89 S.W.3d 17, 28 (Tex. 2002).

16:
See
 Tex. Fam. Code Ann.
 § 161.001(1)(D), (E). 

17:
In re N.R.
, 101 S.W.3d 771, 775 (Tex. App.—Texarkana 2003, no pet.).  Although Jerri challenges the evidence to support termination based on family code sections 161.001(1)(D), (E), and (N), the trial court’s judgment does not refer to ground (N) (constructive abandonment), and the State does not attempt to support termination based on that ground.  We, therefore, need not address Jerri’s fourth issue in which she challenges the sufficiency of the evidence to show constructive abandonment.

18:
The dates of these positive tests were September 9, 2005; June 1, 2005; May 4, 2005; April 20, 2005; and April 15, 2005. 

19:
Some of these services were offered pursuant to the State’s involvement with two of Jerri’s other children, G. and M. 

20:
In one, she was only one-half of a day short of completing the twenty-one-day program
 but left early because she was “mad” and had a scheduled visit with her other children. 

21:
Jerri’s oldest child is nineteen and lives in Killeen with a family member.  A final child, E., died of SIDS.

22:
Tex. Fam. Code Ann.
 § 161.001(1)(E). 

23:
In re E.A.W.S.
, No. 02-06-00031-CV, 2006 WL 3525367, at *9 (Tex. App.—Fort Worth Dec. 7, 2006, pet. denied) (mem. op.); 
Dupree v. Tex. Dep’t of Protective & Regulatory Servs.
, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ).

24:
Cervantes-Peterson v. Tex. Dep’t of Family & Protective Servs.
, 221 S.W.3d 244, 253–54 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

25:
In re D.S.
, No. 11-06-00157-CV, 2007 WL 178229, at *7 (Tex. App.—Eastland Jan. 25, 2007, no pet.) (mem. op.) (a parent’s illegal drug activity after agreeing not to do drugs in a service plan to regain her children is sufficient to establish clear and convincing proof of voluntary, deliberate, and conscious conduct that endangered the well-being of her children).

26:
In re M.C.
, 917 S.W.2d 268, 269 (Tex. 1996)
; Tex. Dep’t of Human Servs. v. Boyd
, 727 S.W.2d 531, 533 (Tex. 1987). 

27:
In re U.P.
, 105 S.W.3d 222, 234 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)
.

28:
See In re M.L.M.
, No. 07-06-00226-CV, 2007 WL 79339, at *4 (Tex. App.—Amarillo Jan. 12, 2007, no pet.) (mem. op.). 

29:
In re D.M.
, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.). 

30:
See M.L.M.
, 2007 WL 79339, at *4 (sufficient evidence where, among others factors, drug use had caused loss of possession of other children).

31:
In re R.M.
, No. 14-02-00221-CV, 2003 WL 253291, at *4 (Tex. App.—Houston [14th Dist.] Feb. 6, 2003, no pet.) (mem. op.).  

32:
See J.F.C.
, 96 S.W.3d at 265–66; 
C.H.
, 89 S.W.3d at 25.

33:
See N.R.
, 101 S.W.3d at 775 (holding that only one statutory ground is required to terminate parental rights under section 161.001).

34:
Holley v. Adams
, 544 S.W.2d 367, 371–72 (Tex. 1976).  

35:
C.H
., 89 S.W.3d at 27.

36:
Id.
  

37:
Id.
 

38:
In re J.D.B.
, No. 02-06-00451-CV, 2007 WL 2216612, at *3 (Tex. App.—Fort Worth Aug. 2, 2007, no pet.) (mem. op.); 
In re C.S.C.
, No. 02-06-00254-CV, 2006 WL 3438185, at *7 (Tex. App.—Fort Worth Nov. 30, 2006, no pet.) (mem. op.)
.

39:
In re D.S.
, 176 S.W.3d 873, 879 (Tex. App.—Fort Worth 2005, no pet.), 
superseded by statute on other grounds as recognized by In re D.A.R.
, 201 S.W.3d 229, 230 (Tex. App.—Fort Worth 2006, no pet.).

40:
Evidence about placement plans and adoption are relevant to best interest.
  See
, 
e.g.
, 
C.H.
, 89 S.W.3d at 28.

41:
In re S.B.
, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.).

42:
There is no evidence of J.A.B.’s desires since she was younger than one year old at the time of trial.

43:
See J.F.C.
, 96 S.W.3d at 265–66; 
C.H.
, 89 S.W.3d at 25.