COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-183-CV

 

 

IN THE INTEREST OF J.F.,
J.J., 

AND J.J., CHILDREN

 

                                              ------------

 

           FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  Introduction

Appellant Brandy F. appeals the trial court=s
judgment terminating her parental rights to her three childrenCJohn,
Julie, and Jennifer (collectively Achildren@).[2]  In four issues, Brandy argues that the
evidence is legally and factually insufficient to support the trial court=s
findings.  We affirm.








                                      II.  Procedural History

In October 2005, the Texas Department of Protective
and Regulatory Services (Athe Department@) filed
a petition to terminate Brandy=s
parental rights to John, Julie, and Jennifer. 
After a bench trial, the trial court found that the Department had
failed to comply with section 262.114 of the Texas Family Code and denied the
Department=s petition.  On appeal, we held that the trial court=s Adeath
penalty@
sanction as to the termination of Brandy=s parental
rights was excessive under the circumstances, and we reversed and remanded the
cause for further proceedings.  In re
J.F., No. 02‑07‑00007‑CV, 2007 WL 2963690, at *8 (Tex.
App.CFort
Worth Oct. 11, 2007, pet. denied) (mem. op.). 
On remand, the trial court, basing its decision on the already existing
trial record, signed an order terminating Brandy=s
parental rights to her children.[3]  This appeal followed.








                                  III.  Evidentiary Sufficiency

In her first two issues, Brandy argues that the
evidence is factually insufficient to support the trial court=s
endangerment findings.  See Tex.
Fam. Code Ann. ' 161.001(1)(D), (E) (Vernon
2008).  In her third and fourth issues,
Brandy argues that the evidence is legally and factually insufficient to
support the trial court=s best interest finding.  See id. '
161.001(2).

A.  Standard of Review








A parent=s rights
to Athe
companionship, care, custody, and management@ of his
or her children are constitutional interests Afar more
precious than any property right.@  Santosky v. Kramer, 455 U.S. 745, 758B59, 102
S. Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex.
2003).  AWhile
parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to
recognize the constitutional underpinnings of the parent‑child
relationship, it is also essential that emotional and physical interests of the
child not be sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d 17, 26 (Tex.
2002).  In a termination case, the State
seeks not just to limit parental rights but to erase them permanentlyCto
divest the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right
to inherit.  Tex. Fam. Code Ann. '
161.206(b) (Vernon 2008); Holick v. Smith, 685 S.W.2d 18, 20 (Tex.
1985).  We strictly scrutinize
termination proceedings and strictly construe involuntary termination statutes
in favor of the parent.  Holick,
685 S.W.2d at 20B21; In re M.C.T., 250
S.W.3d 161, 167 (Tex. App.CFort
Worth 2008, no pet.).

In proceedings to terminate the parent‑child
relationship brought under section 161.001 of the family code, the petitioner
must establish one ground listed under subdivision (1) of the statute and must
also prove that termination is in the best interest of the child.  Tex. Fam. Code Ann. '
161.001; In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established;
termination may not be based solely on the best interest of the child as
determined by the trier of fact.  Tex.
Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).








Termination decisions must be supported by clear
and convincing evidence.  Tex. Fam. Code
Ann. ''
161.001, 161.206(a).  Evidence is clear
and convincing if it Awill produce in the mind of the
trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established.@ 
Id. ' 101.007 (Vernon
2002).  Due process demands this
heightened standard because termination results in permanent, irrevocable
changes for the parent and child.  In
re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see In re J.A.J., 243
S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and
modification).

In reviewing the evidence for legal sufficiency
in parental termination cases, we must determine whether the evidence is such
that a factfinder could reasonably form a firm belief or conviction that the
grounds for termination were proven.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005). 
We must review all the evidence in the light most favorable to the
finding and judgment. Id.  This
means that we must assume that the factfinder resolved any disputed facts in
favor of its finding if a reasonable factfinder could have done so.  Id. 
We must also disregard all evidence that a reasonable factfinder could
have disbelieved.  Id.  We must consider, however, undisputed
evidence even if it is contrary to the finding. 
Id.  That is, we must
consider evidence favorable to termination if a reasonable factfinder could and
disregard contrary evidence unless a reasonable factfinder could not.  Id.

We must therefore consider all of the evidence,
not just that which favors the verdict.  Id.  But we cannot weigh witness credibility
issues that depend on the appearance and demeanor of the witnesses, for that is
the factfinder=s province.  Id. at 573, 574.  And even when credibility issues appear in
the appellate record, we must defer to the factfinder=s
determinations as long as they are not unreasonable.  Id. at 573.








In reviewing the evidence for factual
sufficiency, we must give due deference to the factfinder=s
findings and not supplant the judgment with our own.  In re H.R.M., 209 S.W.3d 105, 108
(Tex. 2006).  We must determine whether,
on the entire record, a factfinder could reasonably form a firm conviction or
belief that the parent violated the endangerment grounds of section 161.001(1)
and that the termination of the parent‑child relationship would be in the
best interest of the child.  C.H.,
89 S.W.3d at 28.  If, in light of the
entire record, the disputed evidence that a reasonable factfinder could not
have credited in favor of the finding is so significant that a factfinder could
not reasonably have formed a firm belief or conviction in the truth of its
finding, then the evidence is factually insufficient.  H.R.M., 209 S.W.3d at 108.

B.  Evidence Presented at Trial

In October 2005, the Department removed Brandy=s
children from her care and placed them into foster care after having received
numerous referrals alleging neglect, physical abuse, and sexual abuse of the
children.

1.  Sexual
Abuse








The evidence indicated that Brandy=s
father, AGrandfather
Danny,@ had
sexually abused both Julie and Jennifer. 
During a therapy session with Laura Greuner, a therapist who specializes
in working with children who have been sexually abused and who suffer from
post-traumatic stress disorders, Julie confided that she had been sexually
abused by Grandfather Danny.  She told
Gruener that her grandfather had touched her private area four times, and then
she talked about how he would pull her pants down and touch her.  Jennifer, in a separate counseling session,
told Gruener that Grandfather Danny would have both her and her sister Aget
naked@ and
then he would look at them and touch them. 
Gruener testified, A[Jennifer]
said to me that [Grandfather] Danny touched us here and she touched herself on
her private area over her clothes to show me what she was talking about.@

Julie confided to Virginia Caldwell, a registered
nurse at Cook Children=s Hospital, that her Grandfather
Danny had put a Apink stick@ in her
genital area and in her Abutt.@  She further stated that her clothes were off
when this happened and that it hurt.  Dr.
Parnell Ryan, who conducted a psychological evaluation of Julie, described
Julie as a little girl struggling with sadness. 
Dr. Ryan testified that Julie had advised him that her grandfather had
fondled her vagina.








During trial, Brandy testified that her father,
Grandfather Danny, started making sexual advances towards her when she was
thirteen years old.  She admitted this to
nurse Caldwell while the nurse gathered a social history during Julie=s
examination.  Brandy also testified that
she had believed Julie when Julie made her initial outcry against Grandfather
Danny in March 2004.  However, despite
her own childhood history with Grandfather Danny and her knowledge that he had
sexually abused Julie in March 2004, Brandy sent the children to live with him
in September 2004.

2.  The
Safety Plan

A Department worker, Christiana Smith, began
working with the family in December 2004. 
Brandy and the Department agreed upon a safety plan that included a
prohibition of any contact between the children and Grandfather Danny.  Brandy also agreed to individual therapy for
herself, individual therapy for the children, parenting classes, random drug
tests to insure that she was drug free, and participation in a drug assessment
if any drug tests were positive.

Brandy violated the safety plan by testing
positive for marijuana and pain killer medication in April 2005, and the
Department removed the children from her care and placed them with Brandy=s
mother, Robin F.  Robin had instructions
to supervise all contact between the children and Brandy.








Smith continued to provide services to Brandy,
including bus passes for transportation and even personally driving Brandy to
some of the services.  However, Brandy
was eventually dropped from her drug abuse classes for noncompliance, the
children were not taken to counseling (even though the Department paid for this
service and agreed to assist in transportation), and a Department worker caught
Brandy having unsupervised contact with the childrenCall
violations of the safety plan.

In addition, Brandy allowed Grandfather Danny to
be in the car with the children as they traveled to a counseling session with
Gruener.  This concerned Gruener because
it was a safety plan violation and because the children were being taken to
therapy sessions where they were likely to talk about the sexual abuse
perpetrated on them by the same man who would be driving them home following
the therapy session.  Finally, the
Department discovered that Brandy had permitted Grandfather Danny to have
contact with the children on another occasion at a Chuck E. Cheese
restaurant.  Brandy testified to this AChuck E.
Cheese safety plan violation@ and
admitted that she was actually present when it occurred.

3. 
Domestic Violence








Once in foster care, the children told of other
instances of exposure to abuse and neglect, including regularly witnessing
domestic violence between Brandy and their father.  Brandy admitted at trial that she and the
children=s father
had exposed the children to violent confrontations.  She testified about one instance in which she
and the children=s father had fought and hit each
other while sitting in the car with John and Julie.  Brandy described the Aassault
in the vehicle@ to Randee Kaitcer, the children=s court
appointed special advocate (ACASA@),
telling Kaitcer that the children=s father
had punched her in the mouth and made her bleed.  Kaitcer confirmed that Julie had witnessed
this bloody assault.  Brandy testified to
further instances in which she and the children=s father
would yell and scream, and he would grab her and push her up against something
to shut her up.  Brandy admitted that
John was affected by the violence, and that he would yell at his father to stop
hitting his mother.

As a result of witnessing this violence, John
confided to Gruener and Dr. Ryan that he was angry and that when he attempted
to intervene and protect his mother, he would Aget hit.@  Julie, also affected by the violence, told
Gruener that she had seen her father hit her mother, that it made her mother
bleed, and that she was Ascared about that.@  She had also confided to Dr. Ryan that she
had witnessed her father hitting her mother.








In addition to witnessing domestic violence,
Brandy also exposed the children to sexual acts between her and the children=s
father.  Brandy=s explanation
to allowing the children to watch such acts was that, since all of the family
lived in one room, she and the children=s father
proceeded to do what Aadults do.@  John told Dr. Ryan that he had watched his
parents having sex and that he had attempted to perform such acts on his
sister.  Julie confirmed this by telling
Dr. Ryan that her brother John would lay on top of her, slobber on her neck,
and rub himself against her.  Julie
referred to this behavior as Asex@ and
said that she had watched her mother and father have sex.

4.  Suicide
Attempt

In May 2005, Brandy attempted to commit suicide
by overdosing on sleeping pills.  She
testified that she did not want to Adeal
with anything at the time@ and that she thought suicide Awould be
a quick way out.@ 
Brandy received treatment for her depression and was prescribed two
types of medications; however, she quit taking the medications because she did
not like the way they made her feel.[4]

5.  Overall
Compliance

By the time this case went to trial, Brandy had
failed to complete her drug classes (having been discharged three times for
noncompliance), had not taken GED classes, had not attended nonoffender sexual
abuse classes, had not attended her therapy sessions for domestic violence, and
was virtually noncompliant with her individual therapy.

C.  Endangerment under
Subsections (D) and (E)













In her first and second points, Brandy argues
that the evidence is factually insufficient to establish that she endangered
her children.  Endangerment is defined as
exposing to loss or injury, to jeopardize. 
In re J.T.G., 121 S.W.3d 117, 125 (Tex. App.CFort
Worth 2003, no pet.).  Under subsection
(D), it is necessary to examine evidence related to the environment of the
child to determine if the environment was the source of endangerment to the
child=s
physical or emotional well‑being.  In
re D.T., 34 S.W.3d 625, 632 (Tex. App.CFort
Worth 2000, pet. denied).  To support a
finding of endangerment, the parent=s
conduct does not necessarily have to be directed at the child, nor is the child
required to suffer injury.  Boyd,
727 S.W.2d at 533.  Rather, a child is
endangered when the environment or the parent=s course
of conduct creates a potential for danger that the parent is aware of but
disregards.  In re S.M.L., 171
S.W.3d 472, 477 (Tex. App.CHouston
[14th Dist.] 2005, no pet.). 
Inappropriate, abusive, or unlawful conduct by persons who live in the
child=s home
or with whom the child is compelled to associate on a regular basis in his home
is a part of the Aconditions or surroundings@ of the
child=s home
under section 161.001(1)(D).  In re
J.L.W., No. 02‑08‑00179‑CV, 2008 WL 4937970, at *6 (Tex.
App.CFort
Worth Nov. 20, 2008, no pet.) (mem. op.); see also In re W.S., 899
S.W.2d 772, 776 (Tex. App.CFort Worth
1995, no writ) (stating that Aenvironment@ refers
not only to the acceptability of living conditions, but also to the parent=s
conduct in the home).  A parent need not
know for certain that the child is in an endangering environment; awareness of
such a potential is sufficient.  See
S.M.L., 171 S.W.3d at 477.

Under subsection (E), the relevant inquiry is
whether evidence exists that the endangerment of the child=s
physical or emotional well‑being was the direct result of the parent=s
conduct, including acts, omissions, and failures to act.  J.T.G., 121 S.W.3d at 125.  Termination under subsection (E) must be
based on more than a single act or omission; a voluntary, deliberate, and
conscious course of conduct by the parent is required.  Id.; D.T., 34 S.W.3d at 634.

A parent=s mental
state may be considered in determining whether a child is endangered if that
mental state allows the parent to engage in conduct that jeopardizes the child=s
physical or emotional well-being.  See
also In re C.D., 664 S.W.2d 851, 853 (Tex. App.CFort
Worth 1984, no writ); In re J.I.T.P., 99 S.W.3d 841, 845 (Tex. App.CHouston
[14th Dist.] 2003, no pet.).  This
includes a parent=s attempts to commit
suicide.  See In re A.M.C., 2
S.W.3d 707, 716 (Tex. App.CWaco
1999, no pet.) (holding that mother endangered children by her suicidal
thoughts, suicide attempts, and neglect).








Because the evidence pertaining to subsections
161.001(1)(D) and (E) is interrelated, we may conduct a consolidated
review.  In re M.C.T., 250 S.W.3d
161, 169 (Tex. App.CFort Worth 2008, no pet.); see
also In re M.R., 243 S.W.3d 807, 819 (Tex. App.CFort
Worth 2007, no pet.) (holding that there was legally and factually sufficient
evidence of both endangerment grounds when, among other things, the evidence
showed that the mother exposed her children to domestic violence and refused to
participate in her CPS service plan).

The record demonstrates that Brandy was aware
that her father, Grandfather Danny, had sexually assaulted at least one of her
children.  Notwithstanding this
knowledge, Brandy sent the children to live with Grandfather Danny and then
continued to allow him access to the children even after a safety plan had been
implemented prohibiting contact between him and the children.  The record also demonstrates that there were
domestic violence issues between Brandy and the children=s
father, which the children witnessed on a regular basis.  Brandy herself testified that the violent
fights between herself and the children=s father
affected JohnCthere was even evidence that
this included physical abuse.  The record
also revealed that the children were beginning to exhibit disturbing behavior
as a result of their parents= having
sex in the children=s presence.  Finally, Brandy admitted that she had
attempted to commit suicide and had stopped taking her prescribed depression medications.








Having carefully reviewed the entire record,
giving due deference to the factfinder, we conclude that the trial court could
have reasonably formed a firm belief or conviction that Brandy knowingly placed
John, Julie, and Jennifer in conditions, or engaged in conduct, that endangered
the children=s physical or emotional
well-being and also knowingly placed the children with a person whose conduct
endangered the children=s physical or emotional
well-being.  See Tex. Fam. Code
Ann. '
161.001(1)(D), (E); M.R., 243 S.W.3d at 819.  Therefore, we hold that the evidence is
factually sufficient to support the trial court=s
endangerment findings.  Accordingly, we
overrule Brandy=s first and second issues.

D.  Best Interest Finding

In her third and fourth issues, Brandy argues
that the evidence is legally and factually insufficient to support the trial
court=s
finding that termination of her parental rights was in the children=s best
interest.

There is a strong presumption that keeping a
child with a parent is in the child=s best
interest.  In re R.R., 209 S.W.3d
112, 116 (Tex. 2006).  Prompt and
permanent placement of the child in a safe environment is also presumed to be
in the child=s best interest.  Tex. Fam. Code Ann. '
263.307(a) (Vernon 2002).  The following
nonexclusive factors should be considered in evaluating the parent=s willingness
and ability to provide the child with a safe environment:

(1) the child=s age and physical and
mental vulnerabilities;

 

(2) the magnitude,
frequency, and circumstances of the harm to the child;

 








(3) whether the child has
been the victim of repeated harm after the initial report and intervention by
the department or other agency;

 

(4) the results of
psychiatric, psychological, or developmental evaluations of the child, the
child=s parents, other family
members, or others who have access to the child=s home;

 

(5) whether there is a
history of abusive or assaultive conduct by the child=s family or others who
have access to the child=s home;

 

(6) whether there is a
history of substance abuse by the child=s family or others who have access to the child=s home;

 

(7) the willingness and
ability of the child=s family to seek out,
accept, and complete counseling services and to cooperate with and facilitate
an appropriate agency=s close supervision;

 

(8) whether the child=s family demonstrates
adequate parenting skills, including providing the child and other children
under the family=s care with:

 

(A) care, nurturance, and
appropriate discipline consistent with the child=s physical and
psychological development;

 

(B) guidance and
supervision consistent with the child=s safety;

 

(C) a safe physical home
environment; and

 

(D) protection from
repeated exposure to violence even though the violence may not be directed at
the child.

 

Id. ' 263.307(b); R.R.,
209 S.W.3d at 116.

 

Other,
nonexclusive factors that the trier of fact in a termination case may use in
determining the best interest of the child include:








(1) the desires of the child;

(2) the emotional and physical needs of the child
now and in the future;

(3) the emotional and physical danger to the
child now and in the future;

(4) the parental abilities of the individuals
seeking custody;

(5) the programs available to assist these
individuals to promote the best interest of the child;

(6) the plans for the child by these individuals
or by the agency seeking         custody;

(7) the stability of the home or the proposed
placement;

(8) the acts or omissions of the parent which may
indicate that the       existing parent‑child
relationship is not a proper one; and 

(9) any excuse for the acts or omissions of the
parent.

Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex.
1976).

These factors are not exhaustive; some listed
factors may be inapplicable to some cases; other factors not on the list may
also be considered when appropriate.  C.H.,
89 S.W.3d at 27.  Furthermore, undisputed
evidence of just one factor may be sufficient in a particular case to support a
finding that termination is in the best interest of the child.  Id. 
On the other hand, the presence of scant evidence relevant to each
factor will not support such a finding.  Id.








Regarding the first factor, the children were too
young to testify at trial; however, Dr. Ildiko Balla, one of the children=s
therapist, presented evidence that the children love their mother and have a
close bond with her.  Nevertheless,
Gruener and Dr. Ryan also presented evidence that while in Brandy=s care,
the children were exposed to sexual abuse, domestic violence, and neglect.

Regarding the second factorCthe
children=s
present and future physical and emotional needsCthe
record revealed that Brandy neglected the children on more than one occasion,
even going so far as failing to take the children to their required counseling
sessions.

The endangerment discussion above addressed the
third, fourth, and eighth factorsCthe
present and future physical and emotional dangers to the children, as well as
Brandy=s
parenting abilities, or lack thereof, and her acts and omissions.  See In re D.S., 176 S.W.3d 873, 879
(Tex. App.CFort Worth 2005, no pet.)
(holding that evidence of a parent=s
unstable lifestyle, including drug use and inability to provide a stable home,
can support a factfinder=s conclusion that termination is
in the child=s best interest), superseded
by statute on other grounds as recognized in In re D.A.R., 201 S.W.3d 229,
230B31 (Tex.
App.CFort
Worth 2006, no pet.).








Concerning the fifth factorCthe
programs available to assist these individuals to promote the best interest of
the childC Brandy failed to complete her
drug classes (having been discharged three times for noncompliance), did not
attend nonoffender sexual abuse classes, did not attend her therapy sessions
for domestic violence, and was virtually noncompliant with her individual
therapy.

Regarding the sixth factor, Brandy did not list
her plans for the children.  Mary
Jokisch, the Departmental worker assigned to Brandy after the Department
removed the children, testified that termination of Brandy=s parental
rights would be in the children=s best
interests due to their therapeutic needs, which Brandy was not meeting.  Jokisch further testified that the Department
had families available to adopt the children. 

The seventh factorCthe
stability of the proposed placementCJokisch
testified that termination followed by adoption would give the children the
stability and structured environment that they needed.

Finally, concerning the ninth factorCany
excuse for the parent=s acts or omissionsCBrandy
testified that she did not complete her services because she simply gave
up.  She further testified that it did
not dawn on her, until after the fact, that moving the children in with
Grandfather Danny would be emotionally damaging for them.








Giving due consideration to the evidence that the
factfinder could have reasonably found to be clear and convincing, we hold that
a reasonable trier of fact could have formed a firm belief or conviction that
the termination of Brandy=s parental rights would be in
the children=s best interest.  See In re J.L.W., No. 02-08-00179-CV,
2008 WL 4937970, at *9B10 (Tex. App.CFort
Worth Nov. 20, 2008, no pet.) (mem. op.) (holding that evidence was legally and
factually sufficient to support trial court=s best
interest finding when evidence revealed that returning child to mother would
risk child=s emotional and physical
well-being because of couple=s past
history of domestic abuse and because of mother=s
inability to care for any of her four children).  Therefore, we hold that the evidence was
legally sufficient to support the trial court=s best
interest finding.  We also hold, based on
the entire record, that the evidence was factually sufficient to support the
trial court=s best interest finding.  Accordingly, we overrule Brandy=s third
and fourth issues.

                                          IV.  Conclusion

Having overruled all of Brandy=s
issues, we affirm the trial court=s
judgment terminating Brandy=s
parental rights to her three children.

 

BOB
MCCOY

JUSTICE

 

PANEL: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DELIVERED: March 26, 2009 











[1]See Tex. R. App. P. 47.4.





[2]We use aliases for the names of the
children:  J.F. will be referred to as
John, the older J.J. as Julie, and the younger J.J. as Jennifer.  See Tex. R. App. P. 9.8(b)(2).





[3]We have been advised that the
audiotape recording of the proceedings held below after remand is blank;
therefore, there is no additional reporter=s record.  No party
complains of this omission.  Further, the
order of termination and the parties provide that the trial court considered
the original trial record in making its decision, and the parties refer to the
original reporter=s record in their briefing.  Therefore, in the interest of justice, we
take judicial notice of the reporter=s record in the prior appeal of this cause and likewise
refer to it in our opinion.





[4]At the time of trial, Brandy had
begun taking her medications again.